## PENCE v. UNITED STATES.

### No. 7516.

Circuit Court of Appeals, Seventh Circuit.

July 2, 1941.

Rehearing Denied Aug. 4, 1941.

J. Albert Woll, U. S. Atty., of Chicago, Ill., Keith L. Seegmiller, of Washington, D. C., and Julius C. Martin, Asst. Atty. Gen., for appellant.

Wm. B. Collins, of Milwaukee, Wis., for appellee.

Before SPARKS and KERNER, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

The Government appeals from a judgment in favor of the beneficiary of a policy of war risk insurance, contending that reinstatement of the policy after lapse for non-payment of premiums was obtained by fraud, hence denying liability on it. The case was tried to a jury which rendered a general verdict in favor of appellee.

Appellee has filed her motion to dismiss the appeal on the grounds that no statement of points was filed with the clerk of the District Court for inclusion with the record, pursuant to Rule 9 of the court, that it raises no substantial question for consideration by this court, is frivolous and was taken only for purposes of delay. She also asks that a penalty be imposed upon appellant for having taken the appeal for purposes of delay.

 With respect to the absence of the statement of points from the original record, although it was included later by leave of this court, we have recently held that failure of an appellant to comply with Rule 75(d), 28 U.S.C.A. following section 723c, pertaining to the inclusion of a statement of points is not jurisdictional and does not necessitate dismissal of the appeal. See Adams et al. v. New York, Chicago & St. Louis R. Co., 7 cir., 121 F.2d 808, decided by this court May 20, and June 24, 1941. Inasmuch as we are of the opinion that the appeal presents a serious question, we cannot agree with appellee that it should be dismissed for frivolity. Under all the facts here presented we think the motion to dismiss should be, and it is denied.

The principal questions presented by the appeal are whether the court erred in failing to grant appellant's motion for a directed verdict or for judgment notwithstanding the verdict because the evidence established that the policy sued upon was reinstated by fraud; and whether the court erred in denying appellant's motion for a mistrial on the ground of prejudice arising out of a newspaper report by which some of the jurors learned of certain proceedings had out of their presence.

The insured, Dr. Pence, an eye, ear, nose and throat specialist, entered the military service as a medical officer in August, 1918. He returned to private practice after his honorable discharge in January, 1919. In December, 1924, he applied for and passed a civil service examination for appointment to the medical service, and in March, 1925, he returned to Government service, being employed thereafter in various Government hospitals.

While in the military service, Pence obtained a policy of war risk insurance in the amount of $10,000 which he permitted to lapse for non-payment of premiums in February, 1920. In June, 1927, he applied for reinstatement of the policy, answering the following questions as indicated:

5. "Are you now in as good health as you were at the due date of the premium default? Yes."

7. "Have you been ill, or contracted any disease, or suffered any injury, or been prevented by reason of ill health from attending your usual occupation, or consulted a physician in regard to your health, since lapse of this insurance? No."

In connection with his medical examination he answered the following question in the negative as to each and every part:

11. "Have you ever been treated for any disease of brain or nerves No, throat or lungs No, heart or blood vessels No, stomach, liver, intestines No, kidney or bladder No, genito urinary organs No, skin No, glands No, ear or eye No, bones No."

The medical examiner recommended acceptance of the risk as a first-class one, and the policy was, accordingly, reinstated as of July 1, 1927. The insured died on September 21, 1934. He had been at home for two days, September 17 and 18, with a cold, but had not been attended by a physician. He worked all day before his death, and was found dead in bed the morning following. His death certificate, signed by the physician in charge of the hospital where he was employed, but who had not attended him, gave as the cause, "coronary thrombosis, sudden death, myocarditis chronic, chronic sinusitis, nasal accessory sinusitis, with acute exacerbation." There was no autopsy performed.

In August, 1928, the insured filed application for compensation, claiming that he was disabled because of "Sinusitis and Ethmoiditis Chr. and Chr. Atrophic Rhinitis and partial loss of smell. Myocarditis" caused by "Flu in service." In May, 1929, he filed application for retirement, again reciting his service-incurred disabilities from chronic ethmoiditis, sinusitis frontal, and myocarditis. In December, 1933, he filed application for a pension for disability resulting from his military service, caused by sinusitis and myocarditis, and listing the names of five physicians who had treated

him from 1918 to 1926. In support of the August, 1928, application, the insured furnished the affidavit of two physicians who stated that they had known him for over two years, and that the facts therein contained were true to the best of their knowledge and belief. He also furnished his own sworn statement that he had suffered from sinusitis and chronic myocarditis since his service, and that his sinusitis had become so severe after his discharge that he had had to give up his practice and find employment where he could be inside, and that he could not stand any exposure to cold.

Supplementing his application for retirement, the insured reported that in 1918, during service, the Camp Physician examined him and told him that he had acute myocarditis for which he prescribed rest and medication which the insured continued to take under his directions for several weeks. He also stated that he had an acute gastric upset which subsequently developed into a duodenal ulcer which perforated in 1920 and again in 1925; and that in 1925 he requested a gastro-intestinal X-ray examination which disclosed an active duodenal ulcer. There was a report of this examination in a letter dated December 9, 1931, from the regional medical officer of the area where Pence was employed at the time of the examination, to the Milwaukee Veterans' Administration, stating that their records showed that they had examined Pence in April, 1925: "G. I.—Fluoroscopic: Stomach negative. Duodenal Bulb—questionable. Suspected adhesions, hepatic flexor of colon. Plates: Colon negative. Cecum and appendix negative. Diagnosis: Suspected duodenal pathology."

December 8, 1933, the insured wrote a very indignant letter to the Veterans' Administration protesting their disposition of his claims for compensation or retirement pay, and their failure to give proper consideration to the affidavits of the five physicians filed in support thereof. He reiterated his defects and disabilities, stating, "It should be well known that a degenerative type of myocarditis is the most treacherous form of heart disease known, as long as compensation keeps up there are very fine (sic) manifest symptoms and that when decompensation does occur it is usually complete and final. This knowledge, it is believed, should be used in evaluating a diagnosis of degeneration myocarditis."

In addition to these reports, the Government also introduced the testimony of a physician who had known the insured while he was in private practice in Iowa, and who stated that the insured had confided to him in 1922 or 1923, that he planned to get out of private practice because he found the country practice too hard for him.

Appellee's response to the array of evidence regarding the condition of her husband's health at the time of reinstatement as indicated by his own statements is that they were false and no attention need be paid to them. She says in her brief, "Standing alone these statements of Pence would prove fraud in his reinstatement on July 1, 1927, but we submit the medical reports of the defendant's own doctors prove Pence's statements false." The reports referred to were of examinations made in connection with his applications for employment in the United States Veterans' Bureau, for reinstatement of his policy, for compensation and for retirement. The first, dated November, 1924, reported no valvular heart disease, and a second, in March, 1925, reported negatively as to everything inquired about, including nose, throat and heart. There was no inquiry about the gastric organs.

In October, 1928, two physicians reported, one that "X-ray shows all sinuses clear," and the other, "Heart: Not enlarged * * myocardial tone poor * * Diagnosis: Lessened Myocardial tone and reserve. Myocardial Degeneration beginning." In June, 1929, the latter physician reported, "Myocardial tone *fairly* good," and that he noted "no *definite* cardio-vascular disease" (our italics), and another diagnosed his condition as Gastroptosis. In November, 1930, the medical examiner reported that his heart was slightly enlarged but no murmur; according to X-ray findings, there was no pathology involving the stomach, but a possible duodenal ulcer, and the nasal sinuses were normal. There was also a diagnosis of chronic appendicitis. In 1931, the report was of moderate, permanent frontal sinusitis and deviated nasal septum and chronic, moderate duodenal ulcer, appendicitis and myocarditis.

Appellee also introduced the testimony of four lay witnesses, including herself and two sons, to prove the excellent state of the health of the insured and his freedom from anything but common colds up to the time of his death. They testified that he was a very active man, taking care of a garden and mowing his own lawn, engaging in

numerous strenuous sports, going on frequent hunting and fishing trips, in all of which he kept up with the others and did not seem to be tired. They also testified that while he was not a heavy eater, he did not require a special diet, but ate what was prepared for all.

A very close question is presented as to whether the record shows any question for the jury, or whether misrepresentation was proved as a matter of law, entitling the Government to a directed verdict in its favor. Certainly it appears to us that the Government is entitled to rely upon statements furnished by Pence for a different purpose, to prove the falsity of the information furnished for the purpose of reinstating the policy.

Our study of the record reveals three actual discrepancies between the answers in the application for reinstatement and the data furnished in support of the subsequent applications. We find no evidence of falsity in the affirmative answer to the fifth question, whether he was in as good health as at the date of default. His negative answer to that portion of the seventh question which inquired whether he had consulted a physician in regard to his health since the lapse of the insurance, appears to be false in view of his own statement of the gastro-intestinal examination in 1925, corroborated by the report of the examination from the office where it was given; and also his affidavits regarding treatments for sinusitis. While the latter might appear immaterial in view of the fact that there was no reference to a disease of the nose or sinuses in the eleventh question, the answer was not, in fact, accurate. His negative answer to the part of the eleventh question bearing on whether he had ever been treated for any disease of the heart appears to be false in view of his report of treatment during his military service by the camp physician who prescribed medication and rest for what he diagnosed as acute myocarditis.

In an opinion on motions after verdicts, the court stated with reference to the various applications for disability compensation, retirement pay, and pension, "It is common knowledge that many veterans during those years made applications for such relief from the government. In making such applications Doctor Pence made statements as to his physical condition which the court received in evidence in this case. They were proper evidence from which the jury might have come to the conclusion that Doctor Pence answered falsely Questions 7 and 11 in his application for reinstatement." We do not agree with this interpretation of the evidence. It appears to us that the facts pointed out above prove beyond question, not that the insured *might have* answered falsely, but that he *did* answer falsely in the particulars noted. That the Government by its examinations in response to the applications proved that the claims therein were not well grounded does not prove the facts contained therein false, and it was those facts which the Government was entitled to know, and about which it inquired before reinstating the policy. It must be remembered that to be entitled to the relief claimed, Pence had to be *disabled* by the diseases and ailments with which he said he was afflicted, to whatever extent required by the regulations, while to be disentitled to the reinstatement of the policy, he had merely to *have* the diseases and ailments. While the myocarditis from which his own statement showed he had suffered and received treatment as early as 1918, did not, according to the evidence, prevent him from leading a perfectly normal, active life, nevertheless, it was one of the causes of his death seven years after reinstatement of the policy. We think his failure to disclose the fact constituted a material misrepresentation, the effect of which was to avoid the policy. See 29 Am.Jur. on Insurance §§ 570 and 572; 4 Couch Cyclopedia of Insurance Law § 885h at p. 2987.

The District Court, in determining that a jury question was presented, cited the case of Bailey v. United States, 5 cir., 92 F.2d 456, and appellant relies upon that, and upon Jones v. United States, 8 cir., 112 F.2d 282. In both of these cases, judgments entered in favor of the Government on verdicts directed by the court were reversed on appeal. In the Bailey case, the same physician examined the insured for reinstatement of his policy, and later submitted affidavits claiming his total disability prior to the date of reinstatement. The Court of Appeals said, "That some of the statements made in connection with appellant's claims under his war risk policy, and for compensation, cannot be reconciled with others made by him and his physician, is quite plain. It was for the jury, however, and not for the court, to say which statements were true and which were false, which were innocently and which were fraudulently made. * * * the policy

provision that it should be incontestable after six months from the date of issue or reinstatement, except for fraud, means just that, and that unwitting, nonwillful misstatements of fact could not constitute fraud within the provision." In the Jones case, the insured explained away irreconcilable statements contained in his applications for reinstatement and for disability compensation by saying that he had never agreed with his physician when he told him he had tuberculosis and should move to a different climate, and according to his explanation, he apparently did not think that the informal conversations with him amounted to consultations with a physician. The Court of Appeals considered this a satisfactory explanation of his failure to mention the consultation with the physician and his negative answers to two questions relating to diseases resulting from service or contracted thereafter.

While it is true that the question of whether or not the insured has misrepresented or falsified concerning medical attendance, consultation with or treatment by physicians and the like is ordinarily a question for the jury, as stated in 4 Couch Cyclopedia of Insurance Law § 889j, "concealment or misrepresentation may be of facts in a legal sense material to the risk, or fraudulent, in either of which cases the issue should not be submitted to the jury." See also Annotation, 131 A.L.R. 617, at page 626. We think there was such concealment and misrepresentation here, and that the falsity of the answers was proved little over a year later by the statements of the insured when he sought to obtain a different type of relief and had no difficulty in recalling his consultations and treatment which he at that time deemed serious. We cannot agree that these inconsistent statements were either immaterial or nonwillful, or that they presented any question for the jury to determine which were true and which false. We are convinced that the Government was entitled to have the verdict directed in its favor. This view of the case renders it unnecessary for us to pass upon the other question presented by the appeal, relating to the effect of a prejudicial newspaper article which was brought to the attention of some of the jurors. However, we have studied the record as to this issue, and we are convinced that whatever prejudice might have resulted from the article was cured by the court's careful instruction on the issue.

Judgment reversed, and cause remanded for further proceedings in harmony with this opinion.

KERNER, Circuit Judge (dissenting).

My reading of this record has convinced me that the case presented a jury question; consequently, the judgment of the District Court should be affirmed.