PENCE *v.* UNITED STATES.

No. 665.   Argued March 11, 12, 1942.—Decided May 11, 1942.

*Mr. William B. Collins* for petitioner.

*Mr. Richard H. Demuth,* with whom *Solicitor General Fahy* and *Messrs. Julius C. Martin, Wilbur C. Pickett, W. Marvin Smith,* and *Keith L. Seegmiller* were on the brief, for the United States.

MR. JUSTICE JACKSON delivered the opinion of the Court.

This action was begun in the United States District Court for the Eastern District of Wisconsin by the petitioner, a widow, as sole beneficiary of a policy of United States Government life insurance issued to her deceased husband, Doctor Lawrence W. Pence. The only contested issue was raised by the Government's affirmative defense that the policy had been reinstated as the result of fraudulent representations in Doctor Pence's application for reinstatement of the policy after it had lapsed for nonpayment of premium.

At the close of the evidence in the trial court, the Government moved for a directed verdict in its favor. The trial judge withheld a ruling on the motion under Rule 50 (b) of the Rules of Civil Procedure and submitted the case to the jury, which returned a general verdict for the petitioner. The Government then moved under Rule 50 (b) for judgment notwithstanding the verdict, and, in the alternative, for a new trial. The trial judge denied both motions and entered judgment on the verdict for the petitioner. The Government appealed to the Circuit Court of Appeals for the Seventh Circuit, which held, with one judge dissenting, that the evidence was insufficient to establish a case for the consideration of the jury and that there was no independent ground requiring that a new trial be granted. It reversed the judgment of the District Court and remanded the cause for further proceedings in harmony with its opinion. 121 F. 2d 804. We granted certiorari. 314 U. S. 602.

Petitioner contends that the evidence raised a question of fact for the consideration of the jury, and that the

decision of the Circuit Court of Appeals therefore denies her the right to trial by jury.[1]

Doctor Pence had been a physician and medical officer in the military service of the United States from August 7, 1918, to January 9, 1919. While in the service he obtained a $10,000 policy of yearly renewable War Risk term insurance, which he allowed to lapse on March 2, 1920, for nonpayment of the premium due on February 1, 1920. In 1925 he gave up a private medical practice to accept employment as a physician with the Government, acting thereafter as a specialist in eye, ear, nose, and throat diseases at various veterans' hospitals and homes maintained by the Government. On June 24, 1927, Pence applied for reinstatement and conversion of the lapsed term policy. The policy was accordingly reinstated and converted effective July 1, 1927; and, except for the question of fraud,[2] was in force at the time of his death on September 21, 1934.

In his application for reinstatement, Pence categorically denied, among other things, that he had ever been treated for any disease of the throat, heart or stomach. So also did he deny that since the lapse of the policy he had consulted any physician in regard to his health, or had been ill or prevented by ill health from attending to his usual occupation.

At the trial there was submitted in evidence a communication from the Regional Medical Officer at Sioux Falls, South Dakota, to the Manager of the Veterans' Administration in Milwaukee, Wisconsin, and dated Decem-

---

[1] This right was conferred by amendment to § 19 of the World War Veterans Act, 43 Stat. 1302, 38 U. S. C. § 445. *Whitney* v. *United States,* 8 F. 2d 476; *Hacker* v. *United States,* 16 F. 2d 702; *United States* v. *Salmon,* 42 F. 2d 353; *United States* v. *Green,* 107 F. 2d 19; H. R. Rep. No. 1518, 68th Cong., 2d Sess., p. 2.

[2] A defense on this ground is authorized by § 307 of the World War Veterans Act, 38 U. S. C. § 518.

ber 9, 1931. This reported that a gastro-intestinal X-ray examination had been made of Pence at the Sioux Falls Veterans' Hospital on April 6, 1925, and had resulted in a diagnosis of "suspected duodenal pathology." Pence made several statements, subsequent to the reinstatement of his insurance and in support of claims for disability benefits from the Government, that this examination had been made at his request. Mrs. Pence admitted that she knew that such an examination had been made.

About fifteen months after his application for reinstatement, and on August 27, 1928, Pence applied to the Government for disability compensation, claiming that he was disabled by chronic sinusitis, ethmoiditis, atrophic rhinitis, and by myocarditis. On September 7, 1928, he executed and submitted a sworn statement in support of his application for disability compensation that he suffered from the following disabilities: "sinusitis, frontal, ethmoiditis, chronic, atrophic rhinitis, chronic, with loss of sense of smell, myocarditis, chronic . . . incurred . . . on or about October 1918." He also stated "That a physician was called in to treat me on Jan. 1927, when he pronounced my disability sinusitis, frontal, acute exacerbation and prescribed serum and local treatment tending to induce drainage. Treatment was carried out by myself. Was confined to bed for 8 days." Together with this he submitted a supporting "Physician's Affidavit," by Doctor L. Grant Glickman, a practicing physician stationed at the time of the asserted examination at the National Home at Leavenworth, Kansas, where Pence was stationed; and employed at the time of the trial by the Veterans' Administration at Fort Snelling, Minnesota.[3]

---

[3] This affidavit contained the following: "I first examined the claimant on Jan. 16, 1927. His complaint at that time was: Frontal sinusitis & Ethmoiditis, chronic. Upon physical examination I found the following symptoms present: Headache, severe; bloody purulent discharge from nose. I diagnosed the injury or disease as Chronic

In 1931 and 1933 Pence made statements in support of other claims for benefits, similar to those set forth above in that they contradicted the representations made in his application for reinstatement involved in this case. On November 28, 1931, he submitted a statement in support of an application for retirement, to the effect that in 1918 a camp physician, by whose authority he remained in barracks under special care while in service, examined his heart and told him it was "shot"; that he had acute myocarditis and a severe gastric upset which "turned out to be a forerunner of duodenal ulcer which perforated in 1920 and again in 1925"; and that because of distress and certain symptoms he later requested a gastro-intestinal examination at the Veterans' Bureau office at Sioux Falls, South Dakota. He concluded his statement: "I never had a day of sickness in my life before this and I do not believe I have had an entirely well one since." On December 8, 1933, he submitted a sworn application for pension for disability resulting from active military service, stating that since the beginning of service one civilian physician had treated him for sinusitis and myocarditis; and four others for sinusitis alone. One of the latter examinations was stated to have been made by Doctor Glickman in 1926, and another was stated to have been made at a time after the lapse of the policy in suit.

Doctor Glickman was produced at the trial as a witness for the Government, in whose employ he still was at the time. The trial judge ruled out, as improper, questions by petitioner's counsel bearing upon the question whether

---

ethmoiditis & frontal sinusitis with an auto exacerbation. The prognosis was fair but incurable. I do believe the claimant's disability is attributable to his military service, for the following reasons: Statement of claimant that above trouble followed influenza in service. Never troubled before that time with above disabilities. Claimant continued under my care until Jan. 25, 1927, during which time I treated him as follows: Argyrol instillations & packs. Serum therapy."

disciplinary action had been taken against Glickman and others because of the execution of affidavits in support of Pence's claim for disability compensation and other of his claims. Upon being asked whether he had an independent recollection of the examination referred to, he stated that he had copies of "records," but not the "originals." The Government's attorney then asked: "Well, Doctor, do you have a recollection of your examination—refresh your recollection of your examination of Dr. Lawrence Pence in January, 1927?" Glickman answered "I do." The Government could not locate the record of the treatment made on Glickman's report as officer of the day—apparently the only record made of the treatment—and it was not produced at the trial.

Glickman testified further as follows: Pence called upon him for treatment on January 16, 1927, while he was acting as officer of the day. He concluded that Pence was suffering from sinusitis and ethmoiditis. Pence knew what his findings were, and stated that he was suffering from a recurrence of a chronic condition. Glickman treated Pence at Pence's home on two or three occasions between January 16 and January 25. Mrs. Pence was at home then, although perhaps not on all occasions. Pence had no cold, but Glickman prescribed a cold serum for him, and also some argyrol packs.

Mrs. Pence testified, however, that: She had no knowledge that her husband had consulted a physician. She was close to him, and constantly with him, and believed that he would have told her of anything seriously the matter with him. He never told her, however, of consulting a physician, or that he suffered from sinusitis, ethmoiditis, or myocarditis. Her husband led an active, vigorous life, and was never confined to bed, except by occasional colds, and suffered from no other sickness. It appeared from her testimony, however, that she was unable to differentiate between a "cold" and a sinus infection.

Pence's two sons and two friends also testified to his active life and apparent good health.

With the evidence in this condition, the Circuit Court of Appeals held that the District Court erred in refusing to withdraw the case from the jury.

The Government, which the Circuit Court of Appeals held was entitled to a directed verdict, had the burden of proof on the issue of fraud. Under the circumstances we have recited, the credibility of Doctor Glickman, its witness, was clearly for the jury. The evidence of the gastrointestinal examination was likewise insufficient to sustain the direction of a verdict. We assume, without deciding, that the jury could not have refused to believe that such an examination had been made. Yet the jury could have properly refused to deduce from this all the necessary elements of the defense of fraud, established by our decisions to be: (1) a false representation (2) in reference to a material fact (3) made with knowledge of its falsity (4) and with the intent to deceive (5) with action taken in reliance upon the representation.[4]

The case of the Government for a directed verdict rests, therefore, upon the statements of Pence made after the reinstatement of his insurance and contradicting the representations in his application for reinstatement. Their admissibility as against the beneficiary-plaintiff, Mrs. Pence, is not in issue on this record, for they were introduced by the Government and received in evidence without objection.[5]

[4] *Claflin* v. *Commonwealth Ins. Co.*, 110 U. S. 81; *Lehigh Zinc & Iron Co.* v. *Bamford*, 150 U. S. 665, 673; *Mutual Life Ins. Co.* v. *Hilton-Green*, 241 U. S. 613; cf. *Derry* v. *Peek*, 14 App. Cas. 337, 374.

[5] Compare *Truelsch* v. *Miller*, 186 Wis. 239, 250, 202 N. W. 352; *Connecticut Mutual Life Ins. Co.* v. *Hillmon*, 188 U. S. 208. It does not appear from the report of the *Hillmon* case whether the insured had the power to change the beneficiary, as Pence did in the present case. § 301 of the World War Veterans Act, 38 U. S. C.

Pence's representations in the application were not evidence of their own veracity.[6] His later contrary statements were repeated, and usually under oath; they are in no way improbable, and are the statements of one who, being himself a doctor, spoke with knowledge of the subject and bearing of his statements. His admissions left no room for conjecture as to the falsity of the previous statements in the application, and of his knowledge of such falsity. From these facts the requisite intent to defraud is presumed,[7] and therefore need not be proven in the absence of countervailing evidence. Materiality and reliance were conclusively established by evidence introduced at the trial, if indeed such proof were needed.

§ 512. The effect of such a power to make the insured's statements admissible against the beneficiary has frequently been dealt with by the courts and commentators. 4 Wigmore, Evidence (2d ed.) 146, note 6; Kales, Admissibility of Declarations of the Insured against the Beneficiary, 6 Columbia Law Review 509; Morgan, The Rationale of Vicarious Admissions, 42 Harvard Law Review 461, 477–78; Finale, The Admissibility of Declarations of the Assured in Life Insurance Litigation, 8 St. John's Law Review 258; 4 Minnesota Law Review 359.

The cash, loan, and other values of the policy in suit to Pence at the time of his various statements contradicting the representations in his application for reinstatement and conversion of the policy in suit do not appear in the record. Compare § 301 of the World War Veterans Act, 38 U. S. C. § 512.

[6] If the law were otherwise, it would follow that a verdict could never be directed in favor of a party alleging fraud in any case in which the falsity of a representation was in issue. Yet, verdicts have frequently been directed in such circumstances. Cf. *Bella S. S. Co.* v. *Insurance Co. of North America,* 5 F. 2d 570; *Aetna Life Ins. Co.* v. *Bolding,* 57 F. 2d 626; *Aetna Life Ins. Co.* v. *Perron,* 69 F. 2d 401, certiorari denied, 293 U. S. 570; *Columbian National Life Ins. Co.* v. *Rodgers,* 93 F. 2d 740.

[7] *Claflin* v. *Commonwealth Ins. Co.,* 110 U. S. 81, 95; *Mutual Life Ins. Co.* v. *Hilton-Green,* 241 U. S. 613, 622; cf. *Agnew* v. *United States,* 165 U. S. 36, 53; *Stipcich* v. *Metropolitan Life Ins. Co.,* 277 U. S. 311, 316–317.

No evidence in the case served in any way to contradict, qualify, or explain Pence's admissions.[8]  We are of opinion that, in the absence of any such evidence, his admissions established so overwhelming a case in favor of the Government as to require the direction of a verdict in its favor,[9] and the decision of the Circuit Court of Appeals is, therefore,

*Affirmed.*

Mr. Justice Murphy, dissenting:

In view of the high value and importance attached by custom and tradition to the right of jury trial as a feature of our federal jurisprudence, and the significant emphasis provided by the federal and state constitutions, scrupulous care should be exercised by courts and judges to avoid rulings, on motions for the direction of a verdict, which in effect wrongfully deprive a litigant of the cherished right. On such a motion our function is not to evaluate the evidence for the purpose of determining whether fraud has been committed.  I am unable to agree with the opinion of the Court, because I think there was sufficient evidence to justify submitting the issue of fraud to the jury.

The opinion of the Court recognizes that the testimony of Glickman, and the evidence of the gastro-intestinal examination were insufficient to sustain the direction of a

---

[8] The denial of Pence's various claims is in no way inconsistent with the truth of his admissions here involved, since his claims were allowable only in the event of actual physical disability at the time. That a man is not presently disabled in no way militates against the truth of statements that he had previously consulted a physician, etc.

[9] *Wilkinson* v. *Kitchin*, 1 Lord Raymond 89; *Decker* v. *Poper*, 1 Selwyn, Nisi Prius (13th ed.) 91; *Hendrick* v. *Lindsay*, 93 U. S. 143; *Arthur* v. *Morgan*, 112 U. S. 495; *Anderson County Commissioners* v. *Beal*, 113 U. S. 227, 241–242; *Chesapeake & Ohio Ry. Co.* v. *Martin*, 283 U. S. 209, 216.

verdict, and correctly states the issue thus: "The case of the Government for a directed verdict rests, therefore, upon the statements of Pence made after the reinstatement of his insurance and contradicting the representations in his application for reinstatement." So stated, the case presents a controverted question of fact, and, in view of the evidence in this case, it was for the jury to find the answer by resolving the conflict between the two contrary sets of self-serving statements made by Pence.

It is admitted that "Pence's representations in the application were not evidence of their own veracity." As an abstract matter one would suppose that Pence's later conflicting statements were likewise "not evidence of their own veracity." However, it is said that reasonable men have no choice but to admit the truth of those later statements, because they "were repeated, and usually under oath; they are in no way improbable, and are the statements of one who, himself a doctor, spoke with knowledge of the subject and bearing of his statements." These factors might be persuasive to a jury that the later statements were true, but it is quite a different thing to hold that they absolutely compel belief. On the basis of the record, an equally plausible premise is that the statements in the application were the true ones. Pence was never absent from work for any appreciable period of time. The reports of his physical examinations from 1928 to his death were not altogether consistent, and any defect disclosed was evidently thought insufficient to warrant allowing any of his various claims for disability benefits, etc. His widow testified that they were "pretty close to one another," that she believed he would have told her if anything was seriously wrong with him, and that she had no knowledge of any serious ailment or consultation with a physician on his part. All this casts doubt on the truth of Pence's statements made after his application for the

reinstatement of his insurance and entitled the jury to pass judgment on them.

Whether Pence was a malingerer or not, disavowing and then asserting injury and disease as a means of collecting different benefits from the Government, is not for us to decide. Suspicion that such was the case does not justify usurping the jury's function of determining, in the light of all the evidence, which of Pence's statements were true and which were false. The case was properly submitted to the jury. Its verdict, rendered on substantial evidence, should not have been set aside.

MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS join in this dissent.