David C. KENT, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 1333.

United States District Court
W. D. Virginia,
Roanoke Division.

Feb. 18, 1964.

Richard W. Davis, Radford, Va., for plaintiff.

Thomas B. Mason, U. S. Atty., Roanoke, Va., for defendant.

DALTON, Chief Judge.

The facts in this case have been stipulated as follows:

"David Cloyd Kent, the veteran, had active military service from May 15, 1943 to September 20, 1945. He applied for and was issued $10,000.00 National Service Life Insurance on the five-year level premium term plan under certificate N 10 982 363 effective May 17, 1943. His wife, Sara Combs Kent, is the last designated beneficiary in VA records. At the expiration of its first term, as extended by PL 118, 79th Congress, the $10,000 insurance was renewed pursuant to veteran's application for an additional five-year term under policy V 416 66 83 effective May 17, 1951, and at the expiration of the succeeding five-year term periods it was automatically renewed again pursuant to PL 148, 83d Congress, for further term periods.

"The $10,000 insurance lapsed on numerous occasions during the years following the veteran's release from service because of his failure to pay premiums when due. However, it was reinstated on each occasion either on a (nonmedical)

comparative health basis by the veteran's certification on an appropriate application therefor that he was in the same state of health at the time of application as on the date of the premium default, or on the basis of a medical application for reinstatement with physical examination report showing that he met good health requirements exacted by the Veterans Administration for reinstatement purposes. The $10,000 insurance was thus retained in force through October 16, 1959; however, the policy again lapsed for nonpayment of the premium due on October 17, 1959.

"Thereafter, on February 24, 1960, the veteran executed a (medical) application for reinstatement (VA Form 9–352). Part II of the form contains several specific and general questions concerning the veteran's health and medical history which require his response, and contains the precautionary legend:

" 'The purpose of the questions contained in STATEMENT OF APPLICANT is to secure complete information regarding the condition of the applicant's health. All diseases, injuries, abnormalities, deformities, infirmities, or the results thereof in impairment of bodily functions must be stated and fully described. Statements made by the applicant in this application are relied upon in granting insurance. Consequently, any deception or knowingly false statement either by inference, omission or otherwise may result in cancellation of the insurance or in the refusal to pay a claim on the policy. * * *'

"In the appropriate spaces for answering the questions the veteran indicated that his claim for compensation had been denied, and he correctly gave his VA claim number, C 15 580 006. He also stated, in response to questions, that he had had a surgical operation and had been hospitalized at Walter Reed Army Hospital in 1945 for lumbar arthritis. He responded in the affirmative to question as to whether he had ever been treated for kidney disease, arthritis, anemia, and disease of the ears. In answer to question number 40, 'APPROXIMATE DATES OF TREATMENT AND NAMES AND ADDRESSES OF PHYSICIANS WHO TREATED YOU', he stated that he fell across a hay rake and injured his lumbar spine in 1925 and that while carrying a body when he was a pallbearer he strained his lumbar region in 1927. In response to question number 5A, 'NATURE OF ILLNESSES SUFFERED WITHIN THE PAST 5 YEARS, NOT ALREADY MENTIONED ABOVE, AND NAMES AND ADDRESSES OF PHYSICIANS OR PRACTITIONERS YOU HAVE CONSULTED OR WHO HAVE TREATED YOU. (Include any abnormal findings on routine checkup.)', he answered 'None'. He also responded in the negative to a question as to whether he had any disease, disability, abnormality or deformity, congenital or otherwise, except as stated above. The veteran executed the statement under the certification reading ' * * * I understand that the Government will rely on the truth of these answers. I HAVE READ ALL THE FOREGOING ANSWERS AND THE SAME ARE TRUE TO MY OWN KNOWLEDGE.' Part III of the form contains a physical examination report by Dr. L. S. Wornal, a VA physician at the Roanoke Regional Office, and shows the veteran's visual acuity, right 20/70, left 20/200, corrected to 20/20 and 20/70 and that he had arteriosclerosis. Dr. Wornal noted in the remarks that the veteran had a limp which was said to be due to favoring his lumbar region; that the veteran had no loss of motion; that an X-ray on June 24, 1953, showed no evidence of arthritis; and that it seemed the veteran had a weak lumbar region and muscular strain. At the same time as the application for reinstatement the veteran also executed and filed application for a Total Disability Income Provision rider under 38 USC 715. In this application the veteran stated that he had mastoid operations from 1915 to 1920; that he had 'arteriosclerosis of the

left eye, Re: Dr. F. Jason Crigler, Charlottesville, Va.'; that he had had Bright's disease at five years of age; and that he had had arthritis and anemia since he was a child. The physical examination report is substantially the same as in the reinstatement application and also was completed by Dr. Wornal.

"Additional examinations were requested by the responsible VA office apparently in connection with the arteriosclerosis of the eye and a Clinical Record Physical Examination report of April 21, 1960 shows, in substance, that the veteran stated he had a mild anemia as long as he could remember; that he never took treatment; that he wore a brace; that examination for anemia showed very little signs of any disturbance; that there was no evidence of tenderness or muscular spasm in the lumbar region; that he had about normal motion in all directions; that he had been hospitalized following service and had seen a local physician a few times about his back; and that there was no evidence of peripheral arteriosclerosis in his extremities or neck or wherever arteries were palpable. Eye examination shows a diagnosis of mild arteriosclerosis consistent with age.

"The veteran's insurance policy was reinstated and the Total Disability Income rider was issued. The veteran was informed thereof and was furnished a copy of the Total Disability rider and advised that remittances he had previously made were used to pay premiums through April 16, 1960 and that the next premium was due on April 17, 1960, when a remittance of $11.40 was received; however, the 1960 dividend was used to pay premiums on the insurance and the rider through July 16, 1960, and the $11.40 paid the insurance premium due July 17, 1960. No additional funds were received in time to retain the insurance and rider in force and the veteran was advised, in substance, by letter of March 20, 1961, that his insurance lapsed for nonpayment of the premium due August 17, 1960, while his Total Disability rider lapsed on July 17, 1960. He was also advised of reinstatement provisions and he was furnished application therefor in addition to being cautioned that he should continue to pay monthly premiums of $15.60 on or before the 17th day of each month while his reinstatement application was being considered.

"Application (medical) for reinstatement (VA Form 9–352) was executed by veteran on March 23, 1961, and was received on March 29; the application form is the same as the above-cited form executed by veteran on February 24, 1960, and, of course, contained the same questions. In this application the veteran indicated, in substance, that he had never applied for compensation or pension; that he had had surgical operations for mastoid, and he answered in the affirmative to questions asking whether he had arthritis, disease of the eyes, disease of the ears. He made no response whatsoever, leaving the space provided therefor blank, to question 5A, reading: 'NATURE OF ILLNESSES SUFFERED WITHIN THE PAST 5 YEARS, NOT ALREADY MENTIONED ABOVE, AND NAMES AND ADDRESSES OF PHYSICIANS OR PRACTITIONERS YOU HAVE CONSULTED OR WHO HAVE TREATED YOU. (Including any abnormal findings on routine checkup.)'. The veteran again certified that he understood the Government would rely on his answers and that they were true to the best of his knowledge. A physical examination report was again made by Dr. L. S. Wornal and shows, in substance, that veteran had very slight arteriosclerosis in the left eye, that there was evidence of impairment of the mouth, nose and throat; that he had a scar over his left mastoid and that there was 'anbylopia in the left eye and very little arteriosclerosis in eye when examined by a specialist.' The veteran was requested to obtain a further eye examination (VA Form 9–1695) and the examination made by Dr. R. O. Smith of Pulaski, Virginia, on April 24, 1961, indicates, in substance, an error of refraction and that only slight progression existed in the left eye since the veteran's last examination in 1957.

"The reinstatement application was approved on May 15, 1961, and the veteran was advised thereof by letter of May 22; he was also advised that premiums were paid through May 16; that the insurance was also automatically renewed for a new five-year term with premiums of $15.40 for the insurance plus $8 for the Total Disability Income rider; that the premium was due on May 17 and should be paid before expiration of the grace period to prevent lapse.

"Thereafter, a claim for total disability benefits, including waiver of premiums and monthly benefits under the rider, was filed by the veteran on September 13, 1961, alleging that he was totally disabled from August 19, 1961 because of multiple sclerosis. He stated that he had been hospitalized at the University of Virginia in August 1961 and at Roanoke Memorial Hospital; that he was treated by Drs. L. P. Hyde and F. E. Dreifus. The claim also contains a report of Dr. Hyde showing that the veteran was deteriorating and regressive and he was not capable of working.

"Dr. L. Perry Hyde, 506 North Jefferson Avenue, Pulaski, Virginia, has been the physician for David C. Kent since July 22, 1954. On January 22, 1959, Kent visited Dr. Hyde complaining of weakness of his right arm and leg. Kent had been referred to Dr. E. N. Weaver at Roanoke, Virginia, for diagnosis and he was of the opinion that Kent was suffering from amyothrophic lateral sclerosis. The veteran had a long history of arthritis, and he had been treated with Vitamin B therapy which was continued. There followed a remission of symptoms in the right arm and leg. However, the veteran continued to have difficulty with his back. Later, in 1959, the veteran was referred to Duke Diagnostic Clinic and a tentative diagnosis of polio was entertained, but upon consultation with Dr. Weaver, the Clinic's final diagnosis was amyotrophic lateral sclerosis. Due to the uncertainty of these diagnoses, Dr. Hyde continued to entertain the thought that the veteran was suffering from arthritis

and continued treating him for the same. In August, 1961, upon the appearance of weakness of the left arm and leg, Mr. Kent was referred to the University of Virginia Hospital where a final diagnosis of multiple sclerosis was made. Prior to this final diagnosis of August, 1961, the veteran had been treated on an arthritic basis by Dr. Hyde and the veteran was not told of any of the other diagnoses until he returned from the University of Virginia Hospital in August, 1961, when Dr. Hyde advised Mr. Kent that he had multiple sclerosis and furnished him with brochures dealing with that illness.

"Dr. Edgar N. Weaver, neuro-surgeon, 2037 Crystal Spring Avenue, S. W., Roanoke, Virginia, first saw Kent on January 2, 1959, at which time he complained that he was losing the use of his right arm and leg and he had been dragging his left leg for the past six months. Kent was hospitalized in the Roanoke Memorial Hospital during the period of January 8–17, 1959, for diagnosis. Upon the completion of his examination, Dr. Weaver's diagnosis was 'probably amyotrophic lateral sclerosis' which is a fatal disease.

"Dr. Weaver is not certain exactly what he told Kent at the time, but because of the seriousness of the disease, he feels he probably hold him he wished to have another opinion. Kent was sent to Dr. John B. Pfeiffer, Jr., at the Duke University Medical Center. Dr. Weaver received a letter from Dr. Pfeiffer stating he suspected David C. Kent had amyotrophic lateral sclerosis.

"The last time Dr. Weaver saw Kent was on June 8, 1961, at which time he seemed to be improved. Dr. Weaver never told Kent of the nature of his diagnosis, since he felt that Kent's knowledge of the type of disease he was suspected to have would be detrimental to his welfare.

"Dr. John B. Pfeiffer, Jr. of Duke University Medical Center, Durham, North Carolina, saw the veteran on August 24, 1959, upon the referral from Dr. Perry Hyde of Pulaski, Virginia, for evaluation of the progressive illness of right side of

the body. Kent denied any difficulty prior to December, 1958, when he began to note clumsiness and weakness in the lower right extremity and almost simultaneously the right upper. Upon examination, it was the examining physician's impression that Kent presented a general pattern suggestive of amyotrophic lateral sclerosis. There appeared to be more atrophy in the lower right extremity below the knee than could be explained by disuse.

"Dr. Fritz Emanuel Dreifus, Assistant Professor of Neurology, Department of Neurology and Psychiatry, University of Virginia Hospital, Charlottesville, Virginia, saw Kent for the first time on August 8, 1961, at the request of his attending physician, Dr. Kenneth Chrispell. After examination at the University of Virginia Hospital, Dr. Dreifus' diagnosis was multiple sclerosis. The purpose of Kent's visit to the University of Virginia Hospital from August 6, 1961, to August 12, 1961, was to obtain a true diagnosis of his condition.

"The veteran, David C. Kent, felt that his trouble was caused by arthritis until August of 1961, and that it was of no great moment. His condition became serious in his own mind in the latter part of the summer of 1961 and he had not been to the University of Virginia Hospital prior to August, 1961. His activities became curtailed in the early part of the summer of 1961 and while he was active in his business of photography, a year before he became disabled, he grossed $14,000.00. Mr. Kent did not mention in his applications for reinstatement of National Service Life Insurance policy and his application for disability rider the fact that he had seen Dr. Weaver, who placed him in the Roanoke Memorial Hospital for diagnosis, and Dr. Pfeiffer at the Duke University Medical Center, because he went to the doctors at the request of Dr. Hyde and he was not told of any of their findings. He felt that in mentioning his arthritic condition, he had furnished all of the information that was necessary because he thought these doctors were seeing him relative to his arthritic condition.

"In a memorandum dated July 17, 1962, from the Chief, Disability and Claims Section, to the office of Medical Consultant, Chief, Underwriting Section, at The Veterans Administration Insurance Center, Philadelphia, Pennsylvania, the question was presented as to the acceptability of the Veteran's application for reinstatement and for total disability income rider had the facts relative to the veteran's physical condition been known. In a memorandum dated July 20, 1962, the medical consultant concluded that neither of the veteran's applications for reinstatement dated February 24, 1960 and March 23, 1961, or his application for total disability income rider, would have been medically accepted if the facts concerning his illness and treatment in 1959 had been known.

"In its decision of September 13, 1962, the Disability Insurance Claims Section held that because of misrepresentation of material facts, which were relied upon by the Veterans Administration, the veteran's applications for reinstatement dated February 24, 1960 and March 23, 1961, and his application for total disability income rider, were contestable for fraud and should be cancelled. It was also held in an accompanying decision of the same date with regard to the veteran's claim for total disability benefits that he was continuously totally disabled from August 6, 1961. However, waiver of premiums were denied for the reason that the reinstatement of the veteran's policy of insurance and the issuance of the total disability income rider were obtained by fraud and were cancelled and that the policy and rider lapsed prior to the date of total disability.

"The veteran subsequently filed an appeal and requested a personal hearing. The hearing was held on November 14, 1962, and the veteran and Mrs. Kent testified in support of the veteran's claim. There were also submitted letters from Dr. L. Perry Hyde and Dr. Edgar N. Weaver, all of which was considered by

the Board of Veterans Appeals and it was concluded that the applications filed by the veteran for reinstatement and total disability income rider, which were relied upon by the Government, contained material statements and omissions which amounted to fraud, and that the reinstatement and total disability rider were obtained through fraud, and, therefore, were void. It was also decided by the Board that a waiver of premiums on the veteran's policy was not in order and the appeal accordingly denied and the veteran was furnished a copy of the Board's decision. The veteran subsequently, on July 25, 1963, filed this proceeding under the provisions of Title 38, Section 784 of the United States Code."

The action is brought to establish the plaintiff's rights to benefits and protection under both the contract of life insurance and the contract for total disability income benefits, including a waiver of premiums on the basic life insurance policy. The Court has for consideration, then, (1) an application for reinstatement of the life insurance contract dated Februray 24, 1960, (2) an application for the total disability income rider to be attached to the basic policy, also dated February 24, 1960, and (3) an application to reinstate the life insurance contract with the disability rider attached, dated March 23, 1961.

The material portions of the veteran's applications are set out in the stipulated evidence above. It will be noted that the two applications for reinstatement, both on approved form number 76–RO45.4, were answered substantially the same.

The contention is made on behalf of the Government that the policy of life insurance and the total disability rider were void for the reason that the policy was reinstated and the rider was issued on the strength of fraudulent representations by the plaintiff.

On the issue of fraud, the Government has the burden of proof. Pence v. United States, 316 U.S. 332, 62 S.Ct. 1080, 86 L.Ed. 1510 (1942). In Pence [1] the Supreme Court of the United States sets forth the necessary elements to establish the defense of fraud as follows: (1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) and with intent to deceive, (5) with action taken in reliance upon the representation.

The fraud alleged, here, is the veteran's failure to disclose in question 5A of both applications for reinstatement, the fact that he had consulted Dr. Hyde in 1959, who in turn referred him to the Roanoke Memorial Hospital and later to the Duke University Medical Center for examination and diagnosis.

In question 4A of the application, the veteran was asked, "Have you ever had or been treated for any of the following?". Under this question thirty-eight diseases or ailments are listed. The plaintiff answered "Yes" to kidney disease, anemia, disease of ears, and, of prime importance here, arthritis.

Question 4C, in obvious reference to question 4A, asked for "Approximate dates of treatment and names and addresses of physicians who treated you". In answering this question, the plaintiff, while not furnishing the names of any treating physicians, did go on to further explain the nature and origin of his arthritic condition.

The next question asked the applicant to state the "Nature of illnesses suffered within the past 5 years, not already mentioned above, and names and addresses of physicians or practitioners you have consulted or who have treated you." To this the plaintiff answered, "None". The crucial question is, does " * * * and name and addresses of physicians or practitioners you have consulted or who have treated you" relate to " * * *

---

1. Pence v. United States, 316 U.S. 332, 62 S.Ct. 1080, 86 L.Ed. 1510 (1942), was also a case where fraud was raised as a defense to an action on a government life insurance policy.

illnesses not already mentioned above", or does this request for names and addresses of physicians cover every ailment and relate back to the diseases listed under question 4A?

The veteran's position is that until the late summer of 1961 he thought that his only malady was arthritis. He thought that he had already disclosed all of the material information with regard to this condition. Therefore, since he believed that he had not suffered any new diseases within the past five years, he answered negatively. In this light he necessarily construed the question to be asking for the names and addresses of physicians whom he had consulted in relation to illnesses " * * * not already mentioned above", in question 4A. The Court is of the opinion that this is the proper construction of the question. It is unlikely that the answers sought to be elicited in question 5A were to include the names of physicians treating the applicant for diseases appearing in question 4A since that same information had already been asked for in question 4C. Thus, if plaintiff did intend to deceive the Veteran's Administration, it was not in the manner contended on behalf of the Government but by his failure to disclose the recent medical history with regard to what he thought was arthritis in his explanation of that condition under question 4C.

■ Under the rule of Pence v. United States, supra, if the applicant did not know that his condition had been diagnosed as a form of sclerosis, the policy could not be voided for his failure to state this. A misrepresentation will not constitute a defense to an action on such a policy as is involved here unless it was intentionally untrue or was made with a reckless disregard for its truth or falsity. United States v. Depew, 100 F.2d 725 (10 Cir. 1938).

The precise issue before us, then, is whether or not the veteran knowingly and with intention to deceive, failed to disclose the fact that he had visited Dr. Hyde in 1959 and the fact that he had been referred to two other doctors for diagnosis in connection with what he thought was arthritis.

The Government cites Raives v. Raives, 54 F.2d 267 (2d Cir. 1931) for the proposition that where there is a wilfully false statement in the application, the intention to deceive follows as a matter of law. In Raives there was no question but what the applicant had made a wilfully false answer. There was a direct question, "Have you been ill * * * or consulted a physician in regard to your health, since lapse of this insurance?". The applicant answered "No", when in fact the evidence showed that he had consulted a physician many times during the period. No such circumstances are present in this case. The applicant, Kent, did fail to state the names of doctors whom he had visited in 1959, but, in two places on the form in questions 3 and 4, indicated that he suffered with arthritis and went on to explain the nature of his illness. Another material difference apparent in comparing the two cases is that in Raives the physician was consulted after the policy had lapsed. In this case, Kent had consulted all of the doctors in question before he allowed the policy to lapse.

The Government also relies on Danaher v. United States, 184 F.2d 673 (8th Cir. 1950). In this case the information sought was, "Give *all illness* within the past five years * * *" (emphasis added), to which the applicant replied, "None". In fact, he had been treated for a heart condition on four occasions within the five-year period. The difference there was that the applicant answered another question to the effect that he had not suffered any disease of the heart within five years when there was nothing in the evidence to indicate that he was unaware of the nature of his treatment. That case was without the additional element present here, that Kent disclosed the nature of the illness with which he went to Dr. Hyde for treatment, and he thought that he was being treated for that same illness.

■ In short, the Court finds nothing in the evidence to indicate that Kent knowingly and wilfully omitted disclosing

the information with regard to his consultations in 1959 before the policy lapsed, or that he intended to deceive the Veteran's Administration into reinstating his policy and issuing the disability rider. It seems unlikely that, had the veteran intended to defraud the Government and had he realized his true physical condition, he would have allowed the policy to lapse after it was reinstated in 1960.

Thus, if the applications and the accompanying physical examination reports prepared by the examining physician for the Veteran's Administration did not fully and completely disclose the medical history of the applicant, any misrepresentation thereof was an innocent one. And certainly, there is nothing in the evidence to indicate that any such representation was made with reckless disregard for its truth or falsity.

A finding that there was no intention to deceive the Government with regard to the application for reinstatement dated February 24, 1960, necessarily requires a finding that, likewise, there was no intention to deceive with regard to the application for the disability income rider, as it was made at the same time, under the same circumstances and with the same state of mind.

It would indeed be harsh to disallow to the veteran, under the circumstances of this case, the right to reinstate his life insurance and to have the benefit of the total disability rider income. He not only served his country but he also dealt with it honestly and in good faith in connection with his insurance. It is understandable that the physicians would not have relished the idea of informing the afflicted person that he was suffering from incurable multiple sclerosis. The veteran had no reason to suspicion anything but his old trouble of arthritis, and acting in this good faith, reinstated his insurance.

An order will be entered granting the relief prayed for, holding that the life insurance contract is in full force and effect and that the veteran is entitled to total disability benefits thereunder.