**VAENGIR LTD. AIRTRANSPORT CO., Plaintiff,**

v.

**NATIONAL AERO ASSOCIATES, INC., Defendant.**

Civ. A. No. 74-1741.

United States District Court, District of Columbia.

Jan. 21, 1977.

Raymond J. Rasenberger, John H. Quinn, Jr., Allen L. Lear, Zuckert, Scoutt & Rasenberger, Washington, D. C., for plaintiff.

James C. Gregg, Randall Hunt Norton, Macleay, Lynch, Bernard & Gregg, Washington, D. C., for defendant.

## MEMORANDUM OPINION

WADDY, District Judge.

This is an action in tort by the plaintiff, Vaengir Ltd. Airtransport Co., against the defendant, National Aero Associates, Inc., for alleged fraudulent misrepresentation by the defendant in connection with dealings between the parties relating to the purchase and sale of an airplane. This case is before the Court on plaintiff's motion for partial summary judgment and defendant's cross motion for summary judgment.

Plaintiff is a corporation engaged in air transportation organized and operating under the laws of the Republic of Iceland with its principal place of business at Reykjavik, Iceland. Defendant is a corporation engaged in the sale and lease of airplanes organized and operating under the laws of the District of Columbia with its principal place of business at National Airport, Gravelly Point, Arlington, Virginia.

The following facts are not disputed by the parties:

(1) A meeting between representatives of the plaintiff and the defendant was held in May, 1973, at which time the plaintiff's representative was shown a twin otter airplane belonging to the Stewart Petroleum company.

(2) May 9, 1973 the plaintiff, Vaengir, sent a telex to the defendant, National Aero, listing specifications for a twin otter airplane, requesting serial and registration numbers of the aircraft, and including a bank reference.

(3) May 9, 1973 National Aero sent a return telex to Vaengir, noting the specifications transmitted by Vaengir, and stating that Vaengir's wired telex acceptance and the establishment of a letter of credit irrevocable for a period of 30 days would constitute a binding agreement between plaintiff and defendant.

(4) At the time of these transactions there existed an industry trade practice requiring a ten per cent cash deposit for the purchase of an airplane prior to any modifications by the seller to meet the specifications required by the purchaser.

(5) Vaengir did not reply by return telex but on May 30, 1973 Vaengir obtained a letter of credit, irrevocable for thirty days, from Landsbanki Islands, an Icelandic bank, payable in the amount of $35,000 to National Aero through the Foreign Office of American Security and Trust Company in Washington, D. C. Negotiation of the letter of credit was contingent upon the fulfillment of one condition by National Aero: National Aero's certification to American Security that it has available and is prepared to deliver to Vaengir a twin otter 100/200 series aircraft with a current certificate of airworthiness, in accordance with specifications agreed to by the parties, Vaengir and National Aero.

(6) This letter of credit was in substitution for the 10 per cent cash deposit against the purchase price of $350,000.

(7) June 3, 1973 plaintiff's representatives inspected an airplane in Fort Lauderdale, Florida. At such time the plane did not meet the specifications set forth in plaintiff's telex of May 9, 1973, but defendant was engaged in making the necessary modifications.

(8) June 6, 1973 National Aero certified to American Security that it had available and was prepared to deliver to Vaengir a twin otter 100/200 series aircraft with a current certificate of airworthiness, in accordance with the specifications agreed to by the parties.

(9) On June 6, 1973, at the time of defendant's certification to American Security, the aircraft was not ready for delivery, but the defendant was in the process of making the modifications required by the agreed specifications.

Plaintiff claims that defendant falsely represented and certified to American Security that it had available and was prepared to deliver to plaintiff an aircraft meeting the specifications previously agreed upon; that defendant knew that the representation and certification were false; that they were made with an intent to defraud plaintiff by securing a $35,000 payment established by a conditional letter of credit payable to defendant through the American Security bank. Plaintiff seeks actual damages of $35,000 and punitive damages in the amount of $27,000.

Defendant claims that there existed a contract for sale of an airplane and that the negotiation by defendant of the letter of credit was in accordance with the contract, and not a misrepresentation of a material fact; that the representation and certification were not made with intent to deceive but were in accordance with the understanding of the parties that the $35,000 was a down payment of ten per cent of the airplane purchase price which, according to industry trade practice, was to be paid prior to modifying the airplane to meet the specifications. Defendant also contends that plaintiff did nothing by way of reliance upon defendant's representation and certification.

Plaintiff argues that there never existed a contract for sale between the parties, and that even if such a contract were found, it would be no defense to the fraudulent misrepresentation alleged by plaintiff. Though in agreement that there is an industry trade practice of requiring a ten per cent cash deposit for the purchase of an airplane, plaintiff contends that the express terms of the letter of credit cannot be modified or explained by trade practice or industry custom.

■ A determination by this Court as to the existence of a contract for sale and purchase is unnecessary for the resolution of these cross motions for summary judgment, as this is an action for fraudulent misrepresentation, sounding in tort. The essential elements which plaintiff must prove in an action for tortious fraud are (1)

a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) and with the intent to deceive, (5) with action taken in reliance upon the representation. Failure to prove any of these essential elements will defeat plaintiff's claim. *Pence v. United States*, 316 U.S. 332, 338, 62 S.Ct. 1080, 86 L.Ed. 1510 (1942), *United States v. Kiefer*, 97 U.S.App. D.C. 101, 228 F.2d 448 (1956).

The single condition for negotiation of the letter of credit by defendant National Aero was National Aero's certification in writing to the American Security and Trust Company that National Aero had available and was prepared to deliver to plaintiff Vaengir a twin otter 100/200 series aircraft with a current certificate of airworthiness, in accordance with specifications agreed to by the parties, Vaengir and National Aero. It is undisputed that by letter of June 6 from National Aero to American Security that the defendant made such a certification and requested the deposit of the $35,-000 to its credit. It is similarly undisputed that at the time of the certification the aircraft was not ready for delivery, and that National Aero was in the process of modifying the aircraft to meet the agreed specifications. The questions here are (1) whether under the circumstances and in light of an admitted industry practice, such certification was made with intent to deceive Vaengir, and (2) whether Vaengir performed any act in reliance upon defendant's representation and certification.

For a proper resolution of these questions, the Court must examine the purposes and policies underlying the industry trade practice requiring a ten per cent deposit. The defendant, National Aero, is a typical broker of airplanes. A stock of aircraft ready for sale is not maintained on hand, but rather a number of purchase options are obtained by National Aero against the possibility that a willing buyer will express an interest in an aircraft under option. Once a willing buyer is located, then National Aero will, at its own expense, consummate a purchase of an aircraft for which it holds a purchase option. Often-

times the aircraft purchased by the broker does not meet the buyer's specifications in full, in which case the broker agrees to modify the craft so as to meet the buyer's specifications. Such was the situation here.

A ten per cent cash deposit is required by industry trade practice as earnest money amounting to a deposit in consideration of the forthcoming, often expensive, modifications to be performed by the broker. Here, the letter of credit was specifically provided as a substitute for the usual and customary ten per cent cash deposit. It is through the $35,000 letter of credit that National Aero was to receive formal authorization for proceeding with the modifications. National Aero contends that it had a right to negotiate the letter of credit as it did, at the time it did, in accordance not only with the trade practice of the industry, but also in accordance with the understandings of the parties.

The letter of credit, by its own terms, was irrevocable for a period of thirty days from its issuance, and would expire on July 1, 1973. Defendant argues and plaintiff admits that the expected period for completion of the modifications to the aircraft was six to eight weeks.[1] Six to eight weeks allotted for modifications of the aircraft would move the expected delivery date to the middle of July, 1973 or approximately the first of August. The letter of credit was set to expire, by its own terms, July 1, 1973.

Plaintiff argues that the letter of credit's express terms must control, and that by the plain language on its face, the letter could not be negotiated by defendant until the aircraft was actually ready for delivery and the agreed modifications had been effectuated. If this be the agreed intent of the parties, the question is posed, what purpose would a thirty day letter of credit negotiable only when the airplane was ready for delivery, serve where, as here, the expected date of delivery is two to four weeks after the letter of credit's expiration date? In thirty days the letter of credit would have expired with defendant left without reimbursement or compensation if plaintiff failed to complete the transaction.

Defendant argues that such a reading of the parties' intent is inconsistent with the industry trade practice and the policies which support that practice, and that the letter of credit would be worthless as security for the aircraft modifications to be undertaken by defendant. The Court agrees.

The expected date of delivery was understood by both parties to fall somewhere between two to four weeks subsequent to the expiration of the letter of credit. Such an agreed expectation leads to the only conclusion which would give viable effect to the letter of credit and to the purposes of the industry trade practice requiring a ten per cent deposit for the purchase of an airplane: that the letter of credit is to be negotiated prior to the modifications being undertaken by the defendant. This is consistent with defendant's position that in negotiating the letter of credit on June 6, 1973 there was no intent on the part of defendant National Aero to deceive plaintiff Vaengir.

Further, on the basis of all the pleadings, and the entire record herein, it appears that the plaintiff obtained the letter of credit pursuant to negotiations with the defendant and had it available at the American Security and Trust Company *prior* to the time of any investigation or observation of the airplane in question.

This would appear to the Court to demonstrate that the letter of credit was *not* obtained in reliance by plaintiff upon any representation of the defendant made subsequent to the time that the letter of credit was obtained.

█ For the reasons heretofore outlined the Court finds that with respect to the questions of intent to deceive and action

[1] Plaintiff's Answers to Interrogatories, Question Number 4, Filed May 29, 1975.

Q: At the time of the May 9, 1973, telex, when did you expect to take delivery on the airplane meeting the specifications set forth?

A: At the time of the May 9, 1973, telex, Vaengir expected to take delivery of the airplane meeting its specifications within six to eight weeks after the issuance of a letter of credit to National Aero.

taken in reliance upon the representation that there is no genuine issue of material fact. The plaintiff has failed to prove two of the five essential elements necessary to make out a case of fraudulent misrepresentation. There being no genuine issue of material fact with respect to at least two of the essential elements of the complaint that plaintiff must prove, the defendant is entitled to judgment as a matter of law.