**Quincie RANKIN, individually and on behalf of others similarly situated; on behalf of hersleft and on behalf of the Kmart Corporation Retirement Savings Plan "A," Plaintiff,**

v.

**David P. ROTS, et al., Defendant.**

No. 02–CV–71045.

United States District Court, E.D. Michigan, Southern Division.

Aug. 20, 2003.

Mark I. Steckloff, Mary Ellen Gurewitz, Sachs Waldman, Detroit, MI, for plaintiff.

Robert N. Eccles, O'Melveny & Myers, Washington, DC, Donald R. Bachand, III, Garratt & Bachand, Jon R. Steiger, Philip T. Carter, Howard & Howard, Bloomfield Hills, MI, Scott R. Lassar, Walter C. Carlson, pending app, Erin E. Kelly, Mark B. Blocker, Sidley, Austin, Chicago, IL, Sharon M. Woods, Todd R. Mendel, Barris, Sott, Walter B. Connolly, Jr., Miller, Canfield, Walter B. Connolly, Jr., Daniel P. Colling, Foley & Lardner, Detroit, MI, Lyman R. Lyon, Troy, MI, Lisa B. Deutsch, Seth C. Farber, Robert C. Myers, pending app, Dewey Ballantine, New York City, for defendants.

### MEMORANDUM AND ORDER DENYING DEFENDANTS'S MOTION TO DISMISS

COHN, District Judge.

Based upon each and all of the disclosures, releases and market events . . . as well as other information available both publicly and privately to all or certain fiduciaries regarding Kmart and information which was known additionally to

various individual defendants, a loyal and prudent fiduciary would have begun an evaluation and an independent investigation of whether Kmart stock remained a prudent investment alternative for the Plans and concluded that either elimination of Kmart stock as an investment alternative and diversification or even complete divestiture within the ESOP was prudent. On information and belief and in anticipation of further discovery, none of the defendants initiated or performed such an investigation or evaluation, and Kmart stock remained an investment alternative in the Plan, and the ESOP remained fully invested in Kmart stock

Second Amended Complaint at ¶ 96.

## I. Introduction

This is a case under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* claiming breach of fiduciary duty which has as its genesis the collapse of Kmart Corporation (Kmart) into bankruptcy.[1] Plaintiff Quince Rankin seeks recovery on behalf of herself, and other similarly situated Kmart employees,[2] who invested in Kmart stock through participation in Kmart's 401(K) plan under which Kmart matched participant contributions with investments in Kmart stock. Rankin names as defendants various officers and directors of

Kmart which she claims are fiduciaries within the meaning of ERISA and have breached their fiduciary duties with respect to the administration of the 401(K) plan essentially by continuing to invest in Kmart stock at a time when Kmart was in serious decline and which resulted in significant losses to the Plan.

Before the Court are several motions to dismiss Rankin's complaint[3] filed by certain defendants. They are:

Defendant Charles Conaway's Motion to Dismiss;

Defendants Jim Defebaugh and Don Morford's[4] Motion to Dismiss; and

Defendants James B. Adamson, Lilyan Affinito, Richard Cline, Willie Davis, Joseph Flannery, Robert Kennedy, Robin Smith, Thomas Stallkamp, and Richard Statuto's Motion to Dismiss.

For the reasons which follow, the motions are DENIED.

## II. Background

### A. The parties

Rankin is a participant in Kmart's Retirement Savings Plan "A" (the Plan). She holds approximately 160 shares of Kmart stock in the Plan.

---

**1.** There is another lawsuit in this district claiming that certain officers and directors of Kmart committed securities fraud in connection with its stock. *D E & J, L.P. v. Conaway,* 02–70684. The two cases are not companion. Several defendants in the securities case have filed motions to dismiss. Oral argument was held on July 10, 2003 at which time they were taken under advisement.

**2.** Rankin seeks class action status. This request is not before the Court at this time.

**3.** Rankin filed a Second Amended Complaint on February 7, 2003, the same date defen-

dants filed motions to dismiss Rankin's First Amended Complaint. Defendants have since revamped their motions to dismiss in light of Rankin's Second Amended Complaint. Thus, the Second Amended Complaint is the subject of the instant motions.

**4.** Defebaugh and Morford filed a joint motion because they are both members of the Employee Benefit Plans Investment Committee and being sued for their roles in connection with the committee. Morford, as stated *infra,* is also the Director of Employee Benefits.

Defendants, and their respective titles and/or roles, are:[5]

Charles Conway former CEO and Director

Jim Defebaugh Vice–President, Associate General Counsel and Secretary and member of the Employee Benefit Plans Investment Committee (hereafter referred to as the "EBPIC")[6]

Don Morford Director of Employee Benefits and member of the EBPIC

James Adamson Outside Director and CEO, formerly served on Finance Committee

Lilyan Affinito Outside Director, formerly on Audit Committee

Richard Cline Outside Director, formerly on Compensation and Incentives Committee

Willie Davis Outside Director, formerly on Compensation and Incentives Committee

Joseph Flannery Outside Director, formerly on Finance Committee

Robert Kennedy Outside Director, formerly on Compensation and Incentives Committee and Finance Committee

Robin Smith Outside Director, formerly on Audit Committee

Thomas Stallkamp Outside Director, formerly on Finance Committee

Richard Statuto Outside Director,[7] formerly on Finance Committee

### B. The Plan Documents [8]

The Plan is both a defined contribution plan and an eligible individual account plan. Its effective date is September 1, 1998. The Plan maintains an individual account for each participant and provides benefits based solely on the amount contributed. There are two sources for contributions: voluntary contributions by participants and matching contributions by Kmart. The matching or employer contributions are part of an Employee Stock Ownership Plan (an "ESOP") which under ERISA allows the matching contributions to be invested in the company's stock and limits a participant's ability to transfer contributions to other investments. During the relevant time,[9] the Plan provided

---

**5.** David Rots, originally listed as the first defendant in the case, was dismissed by stipulation on February 10, 2003. Also dismissed, on February 6, 2003, was defendant Troy Lindon. Named defendants Marty E. Welch, Tim Crow, John McDonald, Stephen Bollenbach, J. Richard Munro, and James Welch have apparently not been served and/or have not responded to the complaint. *See* Amended Pre–Trial Order No. 1 filed January 10, 2003. Thus, the instant motions cover all named defendants, not dismissed, who have been served.

**6.** The EBPIC is alleged to be a "committee formed by the Board of Directors whose function, in part, was to assist in the management and investment of Plan assets, as well as other administrative duties." Second Amended Complaint at ¶ 27.

**7.** Hereinafter, defendants James B. Adamson, Lilyan Affinito, Richard Cline, Willie Davis, Joseph Flannery, Robert Kennedy, Robin Smith, and Thomas Stallkamp, and Richard Statuto will be collectively referred to as "the Outside Directors."

**8.** "The Plan Documents" consist of the Plan, the Kmart Corporation Retirement Savings Plan Trust Agreement (hereinafter "Trust Agreement,") as well as two resolutions passed by the Board of Directors. Because these documents, submitted by defendants, are referenced in the complaint they are considered part of the pleadings. *See Bowens v. Aftermath Entm't*, 254 F.Supp.2d 629 (E.D.Mich.2003).

**9.** The complaint does not say what is the "relevant time," however the proposed class consists of participants and beneficiaries of

that the ESOP assets at all times shall be invested "primarily in [Kmart] stock." See Art. 14.1.[10] The Plan also provides that a participant's employer contributions must be in Kmart stock until the participant reaches age 55 and had been a participant for five full years. After January 1, 1999, a participant age 55 who had been a participant for five years could elect to have future employer contributions invested in any of the investment funds [11] by making a proper election with Kmart.[12] During the relevant time, the Plan held significant amounts of its assets in Kmart stock.

Kmart is the named Plan Administrator with the broad discretionary authority to "interpret, construe, and determine the application of the Plan and its terms ...." Art. 16.1(b). The Plan states that it "shall appoint any Trustee under the Plan and enter into a trust agreement in connection therewith." Art. 16.1(c). It also states that Kmart "may appoint an investment manager or managers with regard to an Investment Fund and may employ one or more persons to render advice with regard to any of the [Kmart's] responsibilities under the Plan." Art. 16.1(e). Kmart "may also delegate any of the foregoing powers to any person or persons or committee or committees, whether already existing or newly-created." Art. 16.1(g).

Under the Trust Agreement, Kmart, as Plan Administrator, appointed Boston Safe Deposit and Trust Company as Trustee. The Plan assets, including the ESOP, were placed in a Trust account. Kmart, however, retained the ability to make investment decisions on behalf of the Plan. In terms of making investment decisions under the Plan, the Trust Agreement states that Kmart "may from time to time appoint one or more Investment Managers ... to manager (including the power to acquire and dispose of) any portion of the Trust Fund ... and to direct the Trustee with respect to effecting investment transaction on behalf of the Trust Fund .... Any such Investment Manager shall be deemed for purposes of the Act [ERISA] to be a fiduciary for Plan investments." Art. II sec. 2.1.

On July 18, 1989, prior to the Plan's effective date, the Board of Directors passed a resolution regarding administration of Kmart's then existing Savings Plan and Pension Plan. This resolution was in effect until June 11, 2002 and was therefore operative during part of the relevant

the Plan "from March 15, 1999 to the present." Second Amended Complaint at ¶ 31. It is assumed that this is the relevant time.

10. After January 25, 2002, when Kmart filed for bankruptcy, the Plan was amended to provide that the matching contributions would no longer be made in Kmart stock.

11. Article 13 of the Plan, entitled Operation of Investment Funds, contemplates that the Plan will consist of a number of investment funds which shall include a fund consisting only Kmart stock. Indeed, the Plan states that the "Investment Funds shall at all times include a Company Stock Fund." Art.13.1. This Company Stock Fund is defined as "the Investment Fund described in section 13.1 which invests in Company Stock." Art. 2.11. "Company

Stock" is defined as "the common stock of [Kmart]." Art. 2.10. Thus, the term "Company Stock" means Kmart stock and "Company Stock Fund" means a stock fund invested solely in Kmart stock.

The nature and composition of other investment funds actually in the Plan is not clear but the Plan says that such investment funds may consist of "Investments of a short-term nature (such as obligation of the Untied States Government and commercial paper) and deposits with a financial institution, as well as cash, pending investment in an identified Investment Fund or for purposes of carrying out the provisions of the Plan." Art.13.2

12. Kmart removed this restriction in February 2002 at which time Kmart stock was essentially worthless.

time. The resolution provides in relevant part (emphasis added):

NOW, THEREFORE, BE IT RESOLVED **that the Director of Employee Benefits is responsible for the administration of the Plans,** including maintenance of records, communications with participants and beneficiaries, payment of benefits and filing of reports. Said Director may adopt and amend such rules, regulations and form and establish such procedures as he or she deems necessary or appropriate in his of her discretion for the administration of the Plans. Said Director shall have the discretionary authority to interpret, construe and determine the application of the Plans and their terms and to resolve all issues arising under the Plans, including the authority to (i) construe dispute of doubtful terms of the Plans or of any rules, regulation, form or procedure, (ii) determine the eligibility of an individual to participate in the Plans, (iii) determine the amount, if any, of benefits to which any participant, former participant, spouse, beneficiary or other person may be entitled under the Plans, (iv) determine the timing and manner of payment of benefits, (v) determine any matter relating to the administration of the Plans or any claim under the Plans, and (vi) resolve all other issues arising under the Plans, any such determinations to be final and binding upon all persons.

FURTHER RESOLVED, that the Director of Employee Benefits shall have the authority to employ persons to render advice or assistance with regard to the administration of the Plans or the securing of any appropriate governmental approvals with respect to the Plans. Said Director shall employ a consulting actuary, to whom shall be delegated the determination of liabilities under the Pension Plan, and said Director shall

recommend to the Employee Benefit Plans Investment Committee (the "EBPIC") the amount of the contribution of the Company and participating recommendations concerning amendments to the Plans and affiliates to which the Pension Plan or the Savings Plan is to be extended, which after having the approval of the Legal Department and the Vice President of Personnel, shall be submitted by said Director to the Finance Committee or the Board of Directors.

FURTHER RESOLVED, that the members of the EBPIC shall be as follows:

. . . . .

**FURTHER RESOLVED that members of the EBPIC may be appointed or removed by the Board of Directors, or by the Finance Committee or Chairman of the Board provided that such action is reported to the Board of Directors.**

**FURTHER RESOLVED, that the EBPIC shall have the responsibility to make or authorize the Director of Employee Benefits to make, recommendations to the Finance Committee or the Board of Directors as to the investment objectives of the Pension Fund and as to the investments under the Savings Plan, the selection and appointment of any trustee or investment manager under the Plans, the allocation of assets and contributions with respect to the Pension Fund, the establishment and operation of Funds under the Savings Plan, and any related matter. The EBPIC shall monitor the performance of the trustees and investment managers and of the Pension Fund and Funds under the Savings Plan, and make reports thereon to the Finance Committee. The EB-**

PIC shall recommend to the Finance Committee or the Board of Directors the amount of the contribution of the Company and participating affiliates under the Pension Plan.

**FURTHER RESOLVED,** that the Finance Committee or the Board of Directors, as the case may be, shall have the responsibility to take action on recommendations from the EBPIC and the Director of Employee Benefits with respect to the Plans as set forth above. The Finance Committee shall report all action taken by it to the Board of Directors, but no approval by the Board of Directors is required except in the case of amendments to the Plans and affiliates to which the Pension Plan of the Savings Plan is to be extended.

Thus, Kmart, acting through the Board of Directors, delegated the role of Plan Administrator to the EBPIC. However, even with the broad delegation of duties, the EBPIC could only make recommendations to the Finance Committee or the Board of Directors on certain important matters, including the investment objectives of the Plans, the selection and appointment of any trustee or investment manager under the Plan, the allocation of assets and contributions with respect to the Plan, the establishment and operation of Funds under the Savings Plan, and any related matter. While the EBPIC is responsible for monitoring the performance of the trustees and investment managers and of the Plan, it make reports to the Finance Committee and can only recommend to the Finance Committee or the Board of Directors "the amount of the contribution of the Company and participating affiliates under the Pension Plan." Thus, the Finance Committee and the Board of Directors are still involved in discretionary decision making for the Plans even though it delegated some duties to the EBPIC.

In June 2002, Kmart altered the allocation of responsibility under the Plan, giving more responsibility to the EBPIC. The Minutes of the Audit Committee Meeting for June 11, 2002 state in relevant part:

### Benefit Plans Update

. . . .Following discussion regarding this recommendation [a recommendation from the EBPIC regarding changing the Plan's investment in a bond fund to another bond fund] and the history and purpose of the EBPIC, and upon duly made and seconded, the Committee unanimously agreed to delegate to the EBPIC the authority and responsibility to make all determinations with respect to (i) the replacement, addition or removal of funds under the Savings Plan, and (ii) the hiring or firing of investment managers under the Company's Employee Pension Plan (the "Pension Plan").

### C. ERISA Generally

Rankin asserts two types of claims under ERISA: a claim under 29 U.S.C. § 1132(a)(2) and under § 1132(a)(3).[13]

---

**13.** Section 1132 provides in relevant part:

(a) Persons empowered to bring a civil action

A civil action may be brought—

(1) by a participant or beneficiary—

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

Section 1132(a)(2) allows "a participant, beneficiary or fiduciary" to bring a civil action for breach of fiduciary duty. Section 1132(a)(3) allows "a participant, beneficiary, or fiduciary" to bring a civil action challenging other violations of ERISA.

Section 1109 allows an action against a fiduciary. It provides in relevant part:

(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

. . . . .

(b) No fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary.

### D. The Lawsuit

On March 18, 2002, Rankin filed a two count complaint running 61 paragraphs, claiming breach of fiduciary duty against all defendants. On October 15, 2002, Rankin filed a First Amended Complaint running 121 paragraphs and again making two claims for breach of fiduciary duty against all defendants.

On February 3, 2003, defendants filed motions to dismiss the First Amended Complaint. Also on that date, Rankin filed a Second Amended Complaint running 144 paragraphs and making six claims [14] for breach of fiduciary duty against defendants. Suffice to say, with each complaint Rankin has further defined and expanded her allegations against defendants. In the Second Amended Complaint, for example, Rankin for the first time delineates the breach of fiduciary duty claims and identifies the discrete defendant or defendants against whom it is asserted. No doubt the Second Amended Complaint was filed in hopes of curing some of the defects in defendants's motion to dismiss the First Amended Complaint. Specifically, the Second Amended Complaint makes the following claims, phrased by Rankin:

Count 1 Breach of Fiduciary Duty or Knowing Participation Therein Under ERISA §§ 502(a)(2) and for Equitable Relief under ERISA § 502(a)(3) Against Director Defendants [the Outside Directors]

Count 2 Breach of Fiduciary Duty or Knowing Participation Therein Under ERISA §§ 502(a)(2) and for Equitable Relief under ERISA § 502(a)(3) Against Director Defendants [the Outside Directors]

Count 3 Breach of Fiduciary Duty or Knowing Participation Therein Under ERISA §§ 502(a)(2) and

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

14. Rankin's complaint contains two "fourth claims for relief" which are in fact two different claims. Thus, although Rankin has only five claims for relief, she has asserted six different claims.

for Equitable Relief under ERISA § 502(a)(3) Against Conaway

Count 4 Breach of Fiduciary Duty or Knowing Participation Therein Under ERISA §§ 502(a)(2) and for Equitable Relief under ERISA § 502(a)(3) Against Defebaugh, Morford, Marty Welch, Crow, and McDonald [15]

Count 5 Breach of Fiduciary Duty or Knowing Participation Therein Under ERISA §§ 502(a)(2) and for Equitable Relief under ERISA § 502(a)(3) Against Morford [16]

Count 6 Breach of Fiduciary Duty or Knowing Participation Therein Under ERISA §§ 502(a)(2) and for Equitable Relief under ERISA § 502(a)(3) Against Members of Finance Committee, Statuto, Flannery, Adamson, Stallkamp, Bollenbach, and Munro [17]

Thus, Rankin is suing three groups: (1) Conaway, (2) members of the EBPIC, and (3) the Outside Directors.

1.

Broken down further,[18] Rankin says that Defebaugh and Morford were fiduciaries because:

**15.** As noted above, Defebaugh and Morford are members of the EBPIC. Defendants Marty Welch, Crow, and McDonald are also alleged to be members of the EBPIC; they have not been served. *See* n. 4, *supra.*

**16.** Morford is singled out in this count because of his role as Director of Employee Benefits.

**17.** These members of the Finance Committee are also Outside Directors. They have been separately singled out because of their membership on the Finance Committee.

- as members of the EBPIC they acted in that capacity to exercise discretionary authority or control respecting management of the Plan and authority or control respecting management or disposition of assets

- they assumed de facto discretionary authority to change investment options within the Plan

- as members of the EBPIC, they were responsible for monitoring the prudence or otherwise of the investment alternatives offered by the Plan, including the Company Stock Fund [19]

- as members of the EBPIC, they were delegated the authority to determine any matter relating to the administration of the Plan, including the duty to monitor and operate the Company Stock Fund

- although their actions were technically subject to the approval of the Finance Committee or the Board of Directors, their actions were often approved by them unanimously or with little or no review, thereby giving the EBPIC effective control of the Plan assets

Second Amended Complaint at ¶ 9, 10, 27, 28.

Rankin says that Defebaugh and Morford breached their fiduciary duties by

**18.** At the hearing on defendants's motion to dismiss, the Court directed Rankin to lodge three copies of the complaint with the Court, separately highlighting her allegations that Conaway, Defebaugh and Morford and the Outside Directors are fiduciaries under ERISA and her allegations that they violated their fiduciary duties.

**19.** *See* n. 11, *supra.*

- Investing in an unreasonably large percentage of the Plans' assets in the Company Stock Fund

- Failing to investigate and monitor the merits of the investments in the Company Stock Fund

- Failing to take steps to eliminate or reduce the amount of Company Stock [20] in the Plan

- Failing to give Plan participants accurate, complete, non-misleading and adequate information about the compositions of the Plans' portfolios and accurate information about Kmart and its true financial condition

- Allowing continued investment in the Company Stock Fund, when a reasonable fiduciary would have know the investment was not prudent

- Compelling continued investment of employer matching contributions in the Company Stock when a reasonable fiduciary would have know the investment was imprudent and an abuse of discretion

Second Amended Complaint at ¶ 133. In particular as to Morford, Rankin also alleges that he, as Director of Employee Benefits, failed to advise Plan participants that their investment in Kmart stock was at substantial risk. Second Amended Complaint at ¶ 138.

### 2.

As to Conaway, Rankin says that he was a fiduciary because

- as Chairman and CEO and a Director, he acted to exercise discretionary authority or control respecting management of the Plan and the disposition of its assets by appointing individuals to the EBPIC

- as a member of the Board of Directors, he had a fiduciary obligation to the Plan (set forth below)

Second Amended Complaint at ¶ 8.

Rankin says that Conaway breached his fiduciary duties by:

- failing to provide complete, accurate, and material information about Kmart and its true financial condition

- failing to disclose material adverse information which severely threatened Plan assets

- failing to give Plan participants accurate, complete, non-misleading and adequate information about the composition of the Plans' portfolios

- failing to monitor or evaluate the performance of those appointed by him to fiduciary capacities

- promoting Kmart stock as a prudent Plan investment and encouraging Plan participants to invest in Company Stock

Second Amended Complaint at ¶ 128–129.

### 3.

Rankin says the Outside Directors are fiduciaries because:

- they are members of the Board of Directors and/or various committees in which they acted to exercise discretionary authority or control regarding the management of the Plan and disposition of its assets

- they undertook the duties of the Plan Administrator [Kmart] by making decisions relating to the management of and investment of Plan assets or by delegating the authority to manage or invest Plan assets to a committee or committees, including the Finance Committee of the Board of Directors and the EBPIC

**20.** *See* n. 11, *supra.*

- they assigned or attempted to assign responsibility for complying with fiduciary obligations to selected agents, including the individual members of the EBPIC and the EBPIC and other committees and employees
- they attempted to delegate to the EBPIC the duty establish and operate Investment Funds within the Plan, including the duty to monitor the Investment Funds
- they had the authority to appoint or remove investment managers, select investment options, to allocate assets and contributions, appoint or removal administrative managers and to generally operate the Plan
- to the extent that they delegated any of their fiduciary duties, they retained a duty to monitor the performance of those to which the fiduciary duty was delegated
- caused the issuance of communications intended to be relied upon by Plan participants covering revenue, earnings, and financial condition of the Company that affected present or potential assets or investments under the Plan and decisions of the participants

Second Amended Complaint at ¶ 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 25, 26, 27, 28, 29.

Rankin says the Outside Directors breached their fiduciary duties by:

- Investing an unreasonably large percentage of the Plans' assets in the Company Stock Fund
- failing adequately to investigate and monitor the merits of the investment in the Company Stock Fund
- failing to take steps to eliminate or reduce the amount of Company Stock in the Plan
- failing to give Plan participants accurate complete, non-misleading and

adequate information about the composition of the Plans' portfolios and accurate information about Kmart and its true financial condition

- maintaining restrictions on the trading of the Company Stock held in the Plans at s time when such restrictions had the effect of creating and maintaining an unsound level of concentration of Plan assets in such stock
- allowing continued investment in the Company Stock Fund, when a reasonable fiduciary would have know the investment was not prudent
- compelling continued investment of employer matching contributions in the Company Stock when a reasonable fiduciary would have known the investment was imprudent and an abuse of discretion
- failing to disclose material adverse information which severely threatened Plan assets
- failing to monitor the performance of fiduciaries to which they delegated fiduciary authority
- failing to convey complete and accurate information to Plan participants

Second Amended Complaint at ¶ 117, 118, 122, 124.

Each of the three motions will be separately considered.

### III. Motion to Dismiss

When analyzing a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court must take a plaintiff's well-pleaded allegations as true. *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 1, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). "[W]hen an allegation is capable of more than one inference, it must be construed in the plaintiff's favor." *Sinay v. Lamson & Sessions Co.,* 948 F.2d 1037, 1039–40 (6th Cir.1991). "A court may dismiss a complaint only if it is clear

that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

IV. Defendants Jim Defebaugh [member of the EBPIC] & Don Morford's [member of the EBPIC and Director of Benefits] Motion to Dismiss

### A. Parties' Arguments

Defebaugh and Morford argue that the complaint must be dismissed because Rankin's allegations of breach of fiduciary duty are essentially fraud allegations that do not meet the heightened pleading standard under Fed.R.Civ.P. 9(b) and 12(e). They also argue that the allegations of fiduciary duty against them are insufficient because they are not well-pleaded and are insufficient to make out fiduciary status. They also argue that the complaint fails to put them on notice under required under Fed. R.Civ.P. 8(a) because the factual allegations remain focused on various classes of defendants, lumping them into several different undifferentiated groups. Finally, they argue that the complaint should be dismissed for the same reasons urged by Conaway and the Outside Directors, although they do not offer any specific support for these reasons.

In response, Rankin says that the Second Amended Complaint gives them fair notice of the claims against them and the fact which form the basis of the claims. Rankin says that the heightened pleading standard for fraud does not apply; Rankin is asserting ERISA claims, not fraud claims.

### B. Analysis

The first issue is whether Fed. R.Civ.P. 9(b) applies to the allegations in Rankin's complaint. Fed.R.Civ.P. 8(a) requires only "a short and plain statement of the claim" which is sufficient to put the defendant(s) on notice of the claim against them. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." By its terms, Rule 9(b) applies only to allegations of "fraud or mistake." Defebaugh and Morford argue that Rule 9(b) should be extended to all breaches of fiduciary duty under ERISA where the allegations are similar to fraud and/or misrepresentation allegations so as to require a plaintiff to plead their claims with the specificity required under Rule 9(b). Notably, Defebaugh and Morford have not provide the Court with any controlling authority for this argument but rather rely on cases where the plaintiff actually plead fraud or misrepresentation, not ERISA breach of fiduciary duty. As the Court of Appeals for the Ninth Circuit explained when faced with the identical argument:

> We have held that Rule 9(b) applies in cases of alleged securities fraud.... However, we have never applied Rule 9(b) in cases in which the plaintiffs allege a breach of fiduciary duty but do not allege fraud. In fact, [the defendants] cite to no case from *any* jurisdiction requiring plaintiffs to comply with Rule 9(b) when they allege breaches of fiduciary duty—under ERISA—or any other law—but do not plead the commission of fraud.

> The reasons for requiring compliance with Rule 9(b) in fraud claims, but not in breach of fiduciary duty claims generally, can be understood by considering the differences between the respective causes of action. Fraud arises from the plaintiff's reliance on the defendant's false representations of material fact,

made with knowledge of falsity and the intent to deceive. *Pence v. United States,* 316 U.S. 332, 338, 62 S.Ct. 1080, 1083–84, 86 L.Ed. 1510 (1942); 2A Moore's Federal Practice ¶ 9.03[1] (1994). Plaintiffs may fairly be expected to identify with specificity the defendant's alleged misrepresentations, though they are not expected to plead with specificity the defendant's state of mind. *See Graue Mill Development Corp. v. Colonial Bank & Trust Co.,* 927 F.2d 988 (7th Cir.1991) (sustaining dismissal where plaintiff had failed to allege specific acts or omissions); *Simcox v. San Juan Shipyard, Inc.,* 754 F.2d 430, 439 (1st Cir.1985) (Rule 9(b) allows state of mind to be averred generally). Rule 9(b) thus requires that plaintiffs specifically plead those facts surrounding alleged acts of fraud to which they can reasonably be expected to have access.

In contrast, the circumstances surrounding alleged breaches of fiduciary duty may frequently defy particularized identification at the pleading stage. Where a fiduciary exercises discretionary control over a plan, and assumes the responsibilities that this control entails, the victim of his misconduct often will not, at the time he files his complaint, be in a position to describe with particularity the events constituting the alleged misconduct. These facts will frequently be in the exclusive possession of the breaching fiduciary. Even in cases where fraud is alleged, we relax pleading requirements where the relevant facts are known only to the defendant. *See Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir.1987). We therefore hold that Rule 9(b) is not applicable in cases in which the complaint alleges breaches of fiduciary duty under ERISA, and does not allege fraud or mistake.

*Concha v. London,* 62 F.3d 1493, 1503 (9th Cir.1995) (internal citations omitted). See also *Swierkiewicz v. Sorema,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (declining to extend Rule 9(b) to employment discrimination claims because Rule 9(b) applies only to fraud or mistake claims); *Peoria Union Stock Yards Co. v. Penn Mutual Life Ins. Co.,* 698 F.2d 320 (7th Cir.1983) (applying Rule 9(b) to plaintiffs' common law claims of fraud but not to plaintiffs' allegations that defendants breached their fiduciary duties under ERISA.); *Thornton v. Evans,* 692 F.2d 1064, 1082–83 (7th Cir.1982) (not applying Rule 9(b) to ERISA breach of fiduciary duty claims but also stating that plaintiffs met both Rule 8(b) and Rule 9(b)); *Crowley v. Corning,* 234 F.Supp.2d 222 (W.D.N.Y.2002) (declining to apply Rule 9(b) to a case against corporate directors and members of ERISA plan's investment committee because plaintiffs alleged that [the defendant Committee] defendants "breached its fiduciary duties, not that it committed fraud.")

Here, Rankin claims that Defebaugh and Morford violated their fiduciary duties under ERISA. While some of the allegations in support of their claim are similar to fraud allegations, *i.e.* that they provided false and misleading information, the gravamen of her claim is grounded in ERISA. The heightened pleading requirement under Rule 9(b) will not be imposed where the claim is for a breach of fiduciary duty under ERISA. Rankin's ERISA claims, as Defebaugh and Morford suggest, are not disguised fraud claims; they are ERISA claims.

■ Having determined that Rule 8(a) applies, the next question is whether Rankin has satisfied this standard in the Second Amended Complaint. The Second Amended Complaint alleges that Defe-

baugh and Morford, together with other members of the EBPIC breached their fiduciary duties in several discrete ways. Rankin outlines the breaches in her response to the motion (which are also set forth above) as follows:

- Investing in an unreasonably large percentage of the Plans' assets in the Company Stock Fund

- Failure to investigate and monitor the merits of the investments in the Company Stock Fund

- Failing to take steps to eliminate or reduce the amount of Company Stock in the Plan

- Failing to give Plan participants accurate, complete, non-misleading and adequate information about the compensations of the Plans' portfolios and accurate information about Kmart and its true financial condition

- Allowing continued investment in the Company Stock Fund, when a reasonable fiduciary would have know the investment was not prudent

- Compelling continued investment of employer matching contributions in Company Stock when a reasonable fiduciary would have know the investment was imprudent and an abuse of discretion

These allegations, which are accompanied by factual assertions, are sufficient to give Defebaugh and Morford fair notice of the claims against them and the facts upon which Rankin relies. Defebaugh and Morford rely on the order in *In re Providian Financial Corp. ERISA Litigation,* No. C 01–5027, 2002 WL 31785044 (N.D.Cal. Nov. 14, 2002) (unpublished) for their argument that Rankin's complaint is an "undifferentiated mass" of allegations. The order in *Providian,* however, simply stated that "plaintiffs have lumped the various classes of defendants into an undifferenti-

ated mass and alleged that all of them violated all of the asserted fiduciary duties. The resulting cause of action is so general that it fails to put the various defendants on notice of the allegations against them." The court did not further explain its reasons in dismissing the complaint. Importantly, the court gave plaintiffs an opportunity to file an amended complaint.

Rankin's Second Amended Complaint is not like the complaint in *Providian.* As noted above, Rankin delineated her claims against each of the defendants or group of defendants (in the case of the Outside Directors). As Rankin explains "the allegations [here] are relatively narrow and addressed to a small class of individuals, they are not, as in *Providian,* asserted against the company, the various plans committees, or other purported fiduciaries. The allegations in this case relate to the monitoring and the failure to monitor the company shares fund as a prudent investment for the ESOP and for the 401(k) provisions of the Plan, and for the failure to reveal information harmful to the interests of the Plan." Rankin's response at p. 9.

Defebaugh and Morford also argue that they are not fiduciaries with respect to some of the duties Rankin says have been breached, i.e. that Rankin has not alleged that they exercised discretionary authority required for fiduciary status. First of all, Rankin has alleged that Defebaugh and Morford as member of the EBPIC and in particular Morford, as Director of Employee Benefits, had or assumed "de facto discretionary authority to change investment options within the Plan." Second Amended Complaint at ¶ 9. She also alleges that Defebaugh and Morford "were delegated the fiduciary duty to establish and operated the Investment Funds of the Plan" which included "the fiduciary duty to establish and operate the Company Stock Fund" and also "assumed, or were delegat-

ed, the fiduciary duty to monitor the prudence or not of continued investment in the Funds established by the Plan, including the Company Stock Fund." *Id.* at ¶ 132. These allegations sufficiently allege that Defebaugh and Morford had fiduciary status with respect to the Plan.

Defebaugh and Morford also argue that to the extent they breached their fiduciary duty to monitor the Plan's investments, Rankin has failed to allege the type of monitoring sufficient to give rise to fiduciary status. This argument is more appropriately addressed at a later stage in the case. Even the cases they cite are cases in which the issue of whether or not a fiduciary duty was breached is addressed either by the trial court in a bench trial or by an appellate court reviewing a trial court's findings of fact and conclusion of law. *Glennie v. Abitibi–Price Corp.*, 912 F.Supp. 993, 1004 (W.D.Mich.1996)(bench trial); *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 30 (2d Cir.2002) (review of trial court's findings of fact and conclusions of law); *Yeseta v. Baima*, 837 F.2d 380, 384–85 (9th Cir.1988)(same).

Overall, Defebaugh and Morford's motion to dismiss is really an attempt to obtain summary judgment and require Rankin to state her claims with a level of particularity not called out in ERISA and not within her ability at this stage in the case. Rankin has plead sufficient ERISA breach of fiduciary duty claims against Defebaugh and Morford in the Second Amended Complaint. To the extent that Defebaugh and Morford argue that the Second Amended Complaint should be dismissed for the reasons set forth in Conaway and the Outside Director's Motions, these arguments are addressed below.

## V. Charles Conaway's Motion to Dismiss and The Outside Director's Motion to Dismiss [21]

### A. Parties' Arguments

#### 1. Conaway

Conaway, the former CEO and Director of Kmart, argues that the Second Amended Complaint should be dismissed for six reasons: (1) Conaway is not a fiduciary merely by virtue of the fact that he served on Kmart's Board of Directors, (2) ERISA's comprehensive statutory disclose provisions and the applicable case law provide that Conaway was not required to disclose non-public financial information to Rankin in connection with her ERISA Plans because to do so would violate securities laws, (3) Section 404(c) of ERISA makes clear that Rankin is not permitted to assert a cause of action for losses incurred in connection with her voluntary selection of Kmart stock, (4) Rankin should be permitted to refile any securities claims within the putative securities class action lawsuit pending in this district, (5) the Second Amended Complaint runs afoul of Rule 9(b) and 8(a), and (6) Rankin's attempt to "shoehorn" Conaway into the complaint though a co-fiduciary liability theory likewise fails.

#### 2. The Outside Directors

The Outside Directors argue that (1) under ERISA section 404(c), they have no liability for Rankin's losses to the Plan, (2) they did not mislead Rankin or fail to disclose anything to her because ERISA does not require such disclosure and the federal securities laws prohibit such selective disclosure, (3) the Second Amended Complaint does not meet Rule 9(b), (4) Rankin cannot make out a breach of fidu-

---

**21.** These two motions are discussed together because Rankin filed a joint response to both motions and because Conaway and the Out-

side Directors advance virtually the same arguments in support of dismissal.

ciary duty claim based on a violation of a breach of the duty of prudence merely by making a conclusory allegation that it was imprudent to allow participants the option to invest in Kmart stock when the Plan itself requires such an investment option, and (5) because ERISA permits, and the Plan required, Kmart matching contributions be invested only in Kmart stock, the concentration of investment in Kmart stock did not violate a duty to diversify.

### 3. Rankin's Response

Rankin argues that section 404(c) of ERISA does not relieve Conaway or the Outside Directors of liability and at most, application of section 404(c) is a factual issue and inappropriate for a motion to dismiss and even if it does apply, Conaway and the Outside Directors are still obligated under ERISA to prudently select the investment options and the Second Amended Complaint is more than sufficient to make out a claim. Rankin also argues that she has sufficiently plead a breach of fiduciary duty against Conaway and the Outside Directors.

Rankin next argues that Conaway and the Outside Directors' argument that they could not have acted in accordance with their obligations under ERISA without violating securities law is a red herring and to the extent that other courts have accepted it, these decisions are incorrect. Rankin also argues that the Second Amended Complaint is sufficiently pled under Rule 8 standards.

Rankin also says that she has not alleged fraud; thus, Conaway's argument that she must refile her claims in the securities litigation is unfounded. Rankin also argues that although the Plan requires investment in Kmart stock, whether or not Conaway and the Outside Directors breached their fiduciary duty to the Plan participants by *continuing* to invest in Kmart stock is a factual issue; not a mo-

tion to dismiss issue. Finally, Rankin says that she has properly named the defendant fiduciaries who are responsible for Plan administration and management and the Second Amended Complaint contains sufficient allegations that the Outside Directors and Conaway had discretionary authority with regard to the Plan and either acted upon it or acted to appoint various committees that performed those functions; none of them are named simply because of their title or office but rather because they actually exercised fiduciary authority or appointed fiduciaries which led to the Plan losses.

### B. Analysis

#### 1. Pleading Requirements

Conway and the Outside Directors argue that the Second Amended Complaint does not meet Rule 9(b). As explained above, Rule 9(b) does not apply to ERISA claims for breach of fiduciary duty.

#### 2. Fiduciaries

Because Conaway and the Outside Directors argue that they are not fiduciaries to the Plan based on Rankin's allegations, a brief discussion of fiduciary duty under ERISA is appropriate.

Congress enacted ERISA in 1974, "after 'almost a decade of studying the Nation's private pension plans' and other employee benefit plans." *Central States, Southeast and Southwest Areas Pension Fund v. Central Transp., Inc.*, 472 U.S. 559, 569, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985) (quoting *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 361, 100 S.Ct. 1723, 1726, 64 L.Ed.2d 354 (1980)). Noting the rapid growth of such plans, Congress set out to " 'assur[e] the equitable character of [employee benefit plans] and their financial soundness.' " *Central States*, 472 U.S. at 570, 105 S.Ct. at 2840 (quoting statute) (alterations in original).

**870**

ERISA seeks to accomplish this goal by requiring such plans to name fiduciaries and by giving them strict and detailed duties and obligations. Specifically, ERISA requires benefit plans to "provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1). An ERISA fiduciary "shall discharge his duties ... solely in the interest of the participants and beneficiaries" and must act "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). These requirements generally are referred to as the duties of loyalty and care, or as the "solely in the interest" and "prudence" requirements. This case involves the nature and extent to which these requirements apply to fiduciaries of an ESOP plan.

ERISA imposes high standards of fiduciary duty upon those responsible for administering an ERISA plan and investing and disposing of its assets. 29 U.S.C. § 1104(a)(1). The fiduciary duties under ERISA encompass three components. The first is a "duty of loyalty" pursuant to which "all decisions regarding an ERISA plan 'must be made with an eye single to the interests of the participants and beneficiaries.'" *Berlin v. Michigan Bell Tele. Co.*, 858 F.2d 1154, 1162 (6th Cir.1988). The second obligation imposed under ERISA, the "prudent man" obligation, imposes "an unwavering duty" to act both "as a prudent person would act in a similar situation" and "with single-minded devotion" to those same plan participants and beneficiaries. *Id.* Finally, an ERISA fiduciary must "'act for the exclusive purpose'" of providing benefits to plan beneficiaries. *Id.* If a fiduciary fails to meet these high standards, he or she may be held personally liable for any losses to the plan that result from his breach of duty. *See* 29 U.S.C. § 1109(a) (quoted *supra*).

Under ERISA, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). As these definitions imply, "'[f]iduciary status ... is not an "all or nothing concept.... [A] court must ask whether a person is a fiduciary with respect to the particular activity in question."'" *Maniace v. Commerce Bank of Kansas City, N.A.*, 40 F.3d 264, 267 (8th Cir.1994); *American Fed'n of Unions Local 102 Health and Welfare Fund v. Equitable Life Assurance Soc'y of the United States*, 841 F.2d 658, 662 (5th Cir.1988) ("A person is a fiduciary only with respect to those portions of a plan over which he exercises discretionary authority or control."). As the Court of Appeals for the Sixth Circuit recently explained:

Fiduciary duties under ERISA "draw much of their content from the common law of trusts." *Varity Corp. v. Howe*, 516 U.S. 489, 496, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). Under ordinary trust law, to administer a trust is to perform the duties imposed, or exercise the powers conferred, by the trust document. *Id.* at 502, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130. A trust document implicitly confers "'such powers as are necessary or appropriate for the carrying out of the purposes' of the trust."

*Id.* (quoting 3 A. Scott & W. Fratcher, Law of Trusts § 186, at 6 (4th ed.1988))..... "There is more to plan (or trust) administration than simply complying with the specific duties imposed by the plan documents or statutory regime; it also includes the activities that are 'ordinary and natural means' of achieving the 'objective' of the plan." *Id.* at 504, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (quoting G. Bogert & G. Bogert, Law of Trusts and Trustees § 551, at 41–52 (rev.2d ed.1992)).

*Best v. Cyrus,* 310 F.3d 932, 935 (6th Cir. 2002).

■ Here, the Outside Directors and Conaway argue that they are not fiduciaries with respect to the Plan and that the Second Amended Complaint does not sufficiently allege that they are. They point out that the Plan names Kmart as the Plan Administrator and makes Kmart "responsible for the administration of the Plan and for carrying out the purposes and provisions of the Plan." Art. 16.1.

This argument misses the mark. Although the Plan names only Kmart as Plan Administrator, Rankin has alleged that both the Outside Directors and Conaway acted as fiduciaries with respect to the Plan because they exercised discretionary authority with respect to the Plan and/or delegated that duty and therefore had a duty to monitor the decisions of those to whom it delegated its authority. Conaway is alleged to have fiduciary status because he appointed members of the EBPIC in his capacity as CEO. Second Amended Complaint at ¶ 8. Specifically, Rankin says that in Conaway's capacity as a Director of Kmart, he exercised "discretionary authority or control respecting management of the Plan and authority or control respecting management or disposition of assets" and also acted as a fiduciary by "appointing individuals to the Employee Benefits Plans Investment Committee." *Id.* He is not named in the complaint simply because of his title.

■ The Outside Directors are also alleged to have fiduciary status because the actually exercised discretionary authority with respect to the Plan or appointed to fiduciary positions those who were responsible for making fiduciary decisions. Second Amended Complaint at ¶ 12–23. Specifically, Rankin says that all of the Outside Directors "exercised discretionary authority respecting the Plan's management or administration . . . by undertaking to perform the duties of the administrator as set forth in the Plan . . . . [and] acted in a fiduciary capacity by making decision relating to the management and investment of Plan assets or by delegating the authority to manage or invest Plan assets to a committee or committees, including the Finance Committee or the Board and the EBPIC." *Id.* at ¶ 27. She also says that the Outside Directors had the discretionary authority "to appoint or remove investment managers, select[ ] investment options, [ ] allocate assets and contributions, appoint or remove administration managers, and generally to operate the Plan." at ¶ 28.

Thus, Rankin essentially alleges that the duties of the Plan Administrator, Kmart, were delegated to or assumed by Conaway and the Outside Directors who in turn delegated their duties (and retained some duties) to the appointed members of the EBPIC. This appears consistent with the Plan Documents set forth above, particularly the resolution in which the Board of Directors determined that the EBPIC would make investment recommendations to the Board of Directors or the Finance Committee; the Board or the Finance Committee had the final authority over investment decisions at least until June 11, 2002.

That the Plan Documents gave such a level of control to the Board of Directors and the Finance Committee is significant. This is not a situation where the Plan Documents simply provide the a board of directors' powers are limited to appointing, retaining, and removing members of a benefits committee. In that circumstance, courts have dismissed ERISA breach of fiduciary claims based on allegations of improper investment decisions against members of the board of directors because of the limited role of the board of directors in relation to the plan. *See In re Williams Companies ERISA Litigation,* 271 F.Supp.2d 1328 (N.D.Okla.2003); *Crowley v. Corning, Inc.,* 234 F.Supp.2d 222 (W.D.N.Y.2002); *Hull v. Policy Management Sys. Corp.,* 2001 WL 1836286 (D.S.C. Feb. 9, 2001) (unpublished).

Because of Conaway's and the Board of Directors broad authority in regards to the Plan, they simply cannot be dismissed at this time. Rankin has sufficiently alleged Conaway and the Outside Director's fiduciary status. It also follows that she has also properly alleged their liability as co-fiduciaries. While it may turn out that Conaway and/or the Outside Directors were not fiduciaries regarding some aspects of the Plan decisions and operation at issue, this issue is not appropriate for consideration at this early stage in the litigation.

### 3. ERISA Section 404(c)

■ Conaway and the Outside Directors argue that Rankin cannot make out a claim for losses based on her voluntary investment in the Plan because the Plan is a 404(c) Plan. ERISA does provide an escape from liability for fiduciaries in certain instances where a loss results from a participant's exercise of control:

(c)(1) In the case of a pension plan which provides for individual accounts and permits a participant ... to exercise control over the assets in his account, if a participant ... exercises control over the assets in his account (as determined under regulations of the Secretary)—

.　　.　　.　　.　　.

(B) no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's ... exercise of control.

29 U.S.C. § 1104(c)(1)(B).

Section 1104(c) is "akin to an exemption from or a defense to ERISA's general rule," the burden establishing its protection should be borne by the party seeking it. *See Meinhardt v. Unisys Corp. (In re Unisys Sav. Plan Litig.),* 74 F.3d 420, 446 (3d Cir.1996) (citing *Lowen v. Tower Asset Mgmt., Inc.,* 829 F.2d 1209, 1215 (2d Cir. 1987)).

Regardless of any merit it may have, this argument is premature at this stage in the case. Whether or not section 404(c) applies is not a question on a motion to dismiss. Section 404(c) provides defendants with a defense to liability; it does not mean that Rankin has failed to make out a claim against them. Even the cases defendants cite in support of their 404(c) argument are cases in which the issue is addressed at the summary judgment stage. Notably, the Court of Appeals for the Third Circuit explained the issue of the application of section 404(c) (in a case cited by defendants) as follows:

the first question we must answer regarding *section 1104(c) is whether the statute allows a fiduciary, who is shown to have committed a breach of duty in making an investment decision, to argue that despite the breach, it may not be held liable because the alleged loss resulted from a participant's exercise of control.* In light of section 1104(c)'s plain language, we believe that it does.

There is nothing in section 1104(c) which suggests that a breach on the part of a fiduciary bars it from asserting section 1104(c)'s application. On the contrary, the statute's unqualified instruction that a fiduciary is excused from liability for "any loss" which "results from [a] participant's or [a] beneficiary's exercise of control" clearly indicates that a fiduciary may call upon section 1104(c)'s protection where a causal nexus between a participant's or a beneficiary's exercise of control and the claimed loss is demonstrated. This requisite causal connection is, in our view, established with proof that a participant's or a beneficiary's control was a cause-in-fact, as well as a substantial contributing factor in bringing about the loss incurred. *See Willett v. Blue Cross and Blue Shield of Alabama*, 953 F.2d 1335, 1343 (11th Cir. 1992) ("Section [1109] of ERISA establishes that an action exists to recover losses that 'resulted' from the breach of fiduciary duty; thus the statute does require that the breach of the fiduciary duty be the proximate cause of the losses claimed...."); *Brandt v. Grounds*, 687 F.2d 895, 898 (7th Cir.1982) (Under 29 U.S.C. § 1109, where "a fiduciary ... who ... breaches ... shall be personally liable to make good ... any losses ... resulting from each such breach", a causal connection is required between the breach of the fiduciary duty and the losses alleged.).

*In re Unisys Sav. Plan Litigation*, 74 F.3d 420, 445 (3d Cir.1996). Thus, the court in *In re Unisys* explained that the application of section 404(c) comes into play after a breach of fiduciary duty is established.

Similarly, in *Vivien v. Worldcom*, 2002 WL 31640557 (N.D.Ca. July 26, 2002) (unpublished), the district court declined to dismiss plaintiff's complaint based on defendant's argument that section 404(c) barred the action. The complaint in *Vivien* was filed by participants in the bankrupt company's retirement plan who sued the company and its top executives under ERISA alleging breach of fiduciary duty. The court stated that

> Contrary to defendants' assertion, the statutory bar to liability under Section 1104(c)(1)(B) [section 404(c)]does not warrant dismissal at this early stage. This matter is more properly reserved for a summary-judgment motion (made at an appropriate time after adequate discovery) since "[w]hether a participant or beneficiary has exercised independent control in fact with respect to a transaction depends on the facts and circumstances of the particular case." See 29 C.F.R. 2550.404c–1(c)(2) (emphasis added). Given its factual nature, the Section 1104(c)(1)(B) point is better reserved for summary judgment or trial, if need be.

*Id.* at *6.

The Court similarly declines to consider Conaway and the Outside Directors' argument as to the application of section 404(c) at this time. There simply are factual issues implicit in section 404(c), including whether or not a participant actually exercised independent control with respect to a transaction. Dismissal is not appropriate.

### 4. Securities Law

Conaway and the Outside Directors also argue that to the extent they had any fiduciary duties with respect to the disclosure of information, they could not as a matter of law breached them because to have disclosed non-public information about Kmart would have violated securities laws.[22] Three district courts

22. The federal securities laws require corporations that choose to sponsor a 401(k) plan that offers an employer's securities to file a Form S–8 registration statement with the

have addressed this argument in cases, such as this, brought by participants in an ERISA Plan claiming breaches of fiduciary duty arising out of continued investment in company stock in an ESOP. One court assumed the argument was correct, but did not decide the motion to dismiss based on the argument. *Hull v. Policy Management Sys. Corp.*, 2001 WL 1836286 (D.S.C. Feb. 9, 2001) (unpublished). One court accepted the argument, in a slightly different context and dismissed plaintiffs' claims accordingly. *In re McKesson HBOC ERISA Litigation*, 2002 WL 31431588, 29 EBC 1229 (N.D.Ca. Sept.30, 2002). One court flatly rejected this argument. *In re Worldcom, Inc.*, 263 F.Supp.2d 745 (S.D.N.Y. June 17, 2003). As will be explained, the better view is expressed by the court which rejected the argument.

In *Hull*, the district court stated:

> In essence then, plaintiff seeks to hold the Committee defendants liable for the alleged wrongs of others or at least to a different standard of care as to the Committee's purchase of PMSC stock than would be applied to its purchase of any other stock. In many respects, this standard would put the Committee in the untenable position of choosing one of three unacceptable (and in some instances illegal) courses of action; (1) obtain "inside" information and then make stock purchase and retention decisions based on this "inside" information; (2) make the disclosures of "inside" information itself before acting on the discovered information, overstepping its role and, in any case, likely causing the stock price to drop; or (3) breach its fiduciary

duty by not obtaining and acting on "inside" information.

> Plaintiff argues that at least the decision to refrain from additional purchases would not violate securities laws and regulations prohibiting insider trading. *Assuming without deciding that this is true*, plaintiff's theory would, nonetheless, violate the spirit of these rules and, at the least, impose a higher standard on ERISA fiduciaries as to Plan purchases of employer stock than would be applied to other stock purchases. Plaintiff has offered no authority for such a dual standard and the court is aware of none. Likewise, the court finds no authority for allowing plaintiff to proceed against the Committee for failing to uncover the alleged misrepresentations of other defendants. See, e.g., Plan § 7.01 ("Except as otherwise provided herein, no Fiduciary shall have any liability for, or responsibility to inquire into, the acts and omissions of any other Fiduciary in the exercise of powers or the discharge of responsibilities assigned to such other Fiduciary under this Plan").

> For the reasons set forth above, the court concludes that the facts asserted against the Committee defendants do not state a cause of action. They must, therefore, be dismissed under Fed. R.Civ.P. 12(b)(6).

*Hull*, 2001 WL 1836286, at *9. Thus, because the court in *Hull* did not address the argument and its statements as to the validity of the argument are dicta. Moreover, they are flawed. As explained below, ERISA does not impose a higher standard than securities laws; the duties under

SEC. Part I of the Form S–8 is the Section 10(a) prospectus that must be disseminated to employees under the Securities Act. See Securities Act, Rule 428, 15 U.S.C. § 77j; 17 C.F.R. § 230.428. The securities laws also require a Section 10(a) prospectus to attach

other corporate SEC filings, including the filings giving rise to plaintiffs' third claim. See 15 U.S.C. § 77j; Commodity and Securities Exchanges Form S–8, 55 Fed.Reg. 23909–01, Item 3 (June 13, 1990) (Incorporation of Documents by Reference).

ERISA and duties under securities law can exist concomitantly.

In *In re McKesson*, the court addressed whether plaintiffs stated a claim for breach of a *duty to divest* the 401K Plan of company stock after a merger, not whether they breached a *duty to disclose information* with respect to the company. As in *Hull*, the court held that the defendant (the benefits committee) could not have breached a duty to divest the plan of company stock and implied they also did not breach a duty to disclose.

In contrast, however, in *In re Worldcom*, the district court refused to dismiss plaintiffs' complaint for breach of fiduciary duty against defendants for making misrepresentations about the soundness of Worldcom stock and by not fully disclosing infirmities in the stock. The court explained why this claim was not subject to dismissal:

> The plaintiffs' third claim alleges that Ebbers and Miller, as "WorldCom Defendants," breached their fiduciary duties by making material misrepresentations about the soundness of World-Com stock and the prudence of an investment in WorldCom stock, and by transmitting materials containing the misrepresentations to Plan participants. Plaintiffs allege that by failing to disclose fully and accurately infirmities in WorldCom's stock price, Ebbers and Miller caused plaintiffs to make and maintain investments in WorldCom stock even though Ebbers and Miller knew or should have known that World-Com securities were not a prudent investment. The misrepresentations are alleged to have been contained in World-Com's SEC filings, which were attached as required by the federal securities laws to a prospectus given to WorldCom employees.

An ERISA fiduciary may not knowingly present false information regarding a plan investment option to plan participants. There is no exception to the obligation to speak truthfully when the disclosure concerns the employer's stock.

In arguments that overlap with those made in connection with the Second Claim [based on a breach of the duty to monitor Plan investments], Ebbers and Miller argue that the Third Claim imposes a continuous duty of disclosure on ERISA fiduciaries that overwhelms the federal securities law disclosure requirements and compels fiduciaries to violate the prohibitions against insider trading. If an ERISA fiduciary who was also an insider discovers material information affecting the value of the investment in the Plan sponsor's stock, they posit that the fiduciary has one of two choices. If he discloses material information to Plan participants before making it publicly available, he would violate the insider-trading laws by suggesting to Plan participants that they divest stock based on material nonpublic information. See 15 U.S.C. §§ 78u–1(a)(1)(B) & (b)(1)(A) (2002). If the fiduciary publicly discloses the material information, the Plan participants would be no more protected by virtue of ERISA than they would be as investors protected by the securities laws. They contend that plaintiffs' claim stretches ERISA far beyond its intended scope. They emphasize that the alleged material misstatements were the SEC filings incorporated by reference into the Plan SPDs and that those statements were prepared and published pursuant to the securities laws, not ERISA. Miller, in particular, argues that, if credited, plaintiffs' logic would impose ERISA fiduciary obligations on all authors of corporate SEC filings, a conclu-

sion supported by neither the statute nor caselaw.

*Those who prepare and sign SEC filings do not become ERISA fiduciaries through those acts, and consequently, do not violate ERISA if the filings contain misrepresentations. Those who are ERISA fiduciaries, however, cannot in violation of their fiduciary obligations disseminate false information to plan participants, including false information contained in SEC filings.* Claim Three adequately pleads that Ebbers and Miller, each of whom is alleged to have been a fiduciary through inter alia his or her administration of the World-Com Plan, breached their fiduciary obligations under ERISA by at the very least transmitting material containing misrepresentations to Plan participants.

The defendants have tried to describe a tension between the federal securities laws and ERISA that would require the dismissal of this claim. Their arguments, however, cannot undermine the soundness of the general principle underlying Claim Three that ERISA fiduciaries cannot transmit false information to plan participants when a prudent fiduciary would understand that the information was false. Nor is there anything in Claim Three, despite the defendants' suggestions otherwise, that requires ERISA fiduciaries to convey non-public material information to Plan participants. What is required, is that any information that is conveyed to participants be conveyed in compliance with the standard of care that applies to ERISA fiduciaries.

The difficulties that exist in the analysis of this claim arise principally from the facts that at least one of the defendants, Ebbers, is alleged to be both a corporate insider and an ERISA fiduciary, and that the alleged misrepresentations concern the company itself. The defendants argue that the plaintiffs are imposing a duty of continuous disclosure on ERISA fiduciaries that does not exist under the federal securities laws. *While there may be some case in which there will be a conflict between the two statutory schemes, it is not so evident that a conflict exists here.* The Complaint alleges that WorldCom's SEC filings contained material misrepresentations regarding WorldCom's financial condition. Having spoken in its periodic SEC filings about the company's financial condition, WorldCom had a duty under the federal securities laws to correct any prior material misrepresentation when it became aware of the falsity. *See In re Time Warner, Inc. Sec. Litig.,* 9 F.3d 259, 268 (2d Cir.1993). *In any event, the existence of duties under one federal statute does not, absent express congressional intent to the contrary, preclude the imposition of overlapping duties under another federal statutory regime. See United States v. Sforza,* 326 F.3d 107, 111 (2d Cir.2003).

In conclusion, the motion to dismiss Claim Three is denied as to defendants Ebbers and Miller. This claim adequately alleges that they transmitted materially false information to Plan participants in breach of their fiduciary obligations.

*In re Worldcom, Inc.,* 2003 WL 21385870, at \*14–15 (emphasis added).

The reasoning in *Worldcom,* expressed particularly by the underlined language, is sound. Like the allegations in *Worldcom,* Rankin here says that Kmart, through defendants Conaway and/or the Outside Directors, made SEC filings which contained material misrepresentations about Kmart's financial condition (which are also the allegations in the Kmart securities case). Defendants had a duty under securities laws

not to make any material misrepresentations; they also had a duty to disseminate truthful information to plan participants, including the information contained in SEC filings. Contrary to Conaway and the Outside Directors' argument, their duties under ERISA and securities law coexist.

The Department of Labor, in its amicus brief in the Enron litigation,[23] cogently explained how ERISA and securities law duties can co-exist:

Defendants' duty to "disclose or abstain" under the securities law does not immunize them from a claim that they failed in their conduct as ERISA fiduciaries. To the contrary, while their Securities Act and ERISA duties may conflict in some respects, they are congruent in other, and there are certain steps they could have taken that would have satisfied both duties to the benefit of the plans. First and foremost, nothing in the securities laws would have prohibited them from disclosing the information to other shareholders and the public at large, or from forcing Enron to do so. See IN THE MATTER OF CADY, ROBERTS & CO., 1961 WL 60638 at *3 (S.E.C. Release No. Nov. 8, 1961). The duty to disclose the relevant information to the plan participants and beneficiaries, which the Plaintiffs assert these defendants owed as ERISA fiduciaries, is entirely consistent with the premise of the inside trading rules: that corporate insiders owe a fiduciary duty to disclose material nonpublic information to the shareholders and trading public. See id. (incorporating common law rule that insiders should reveal material insider information before trading); see also Plaintiffs' ERISA Opposition at 39 n. 18 (arguing that these Defendants could have publically disclosed or forced Enron to disclose before selling the stock).

Second, it would have been consistent with the securities law for the Committee to have eliminated Enron stock as a participant option and as the employer match under the Savings Plan. . . . . It would have been entirely consistent with the securities laws for the fiduciaries to have eliminated Enron stock as a participant option and the employer match. The Administrative Committee had no affirmative duty to injure the plan by continuing to purchase stock that they allegedly knew or should have known was artificially inflated. Finally, another option would have been to alert the appropriate regulatory agencies, such as the SEC and the Department of Labor, to the misstatements.

Department of Labor Amicus Brief at p. 26–27 (Ex. 2 to Rankin's Response to Motion to Dismiss of Outside Directors).

**23.** Enron and others are being sued in the United States District Court for the Southern District of Texas in both a securities fraud action and in an ERISA action which apparently have been consolidated. The ERISA action is entitled Tittle v. Enron, et al, H–01–3913 where several of the defendants (perhaps all) have filed motions to dismiss. At best as can be gleaned from the docket sheet, which runs 103 pages, the motions are pending. According to the amicus brief filed by the Secretary of Labor, defendants make virtually the same arguments in the Enron case as in this case.

The Department of Labor itself became a party to the Enron litigation when it filed a complaint in the Southern District of Texas on June 26, 2003 claiming that Enron and its various former officers and directors breached their fiduciary duties under ERISA for failing to protect employee's retirement assets invested in Enron stock. Chao v. Enron. See News Release, U.S. Dept. of Labor, U.S. Labor Department Sues Enron, Executives and Plan Officials For Failing to Protect Workers (June 26, 2003).

The better view is expressed in the *Worldcom* opinion and in the Department of Labor's Amicus Brief. Conaway and the Outside Directors cannot escape potential liability on ERISA breach of fiduciary duty claims because of any duties they may have under securities law. At the very least, the securities laws do not bar Rankin from asserting an ERISA fiduciary duty claim against them.

### 5. Plan Requirements

 The Outside Directors argue that they could not have breached any fiduciary duties (particularly a duty of prudence and a duty to diversify) because the Plan (the ESOP portion) requires that it be invested in Kmart stock. The Outside Directors argue that because the Plan provides that the ESOP be invested "primarily" in Kmart stock they could not have breached a duty of prudence *unless* it was "obvious that continued investment in Kmart securities would be so imprudent that the Plan's drafters could not have intended such investments under the circumstances." It is the "unless" situation that Rankin alleges has occurred. That is, that under the circumstances, the Outside Directors had knowledge of Kmart's financial condition and other problems and as a result should not have invested in Kmart stock despite the Plan's requirements.

 Contrary to the Outside Directors' implication, a fiduciary is not required to blindly follow the Plan's terms. Indeed, "a fiduciary must also act 'in accordance with the documents and instruments governing the plan,' insofar as those documents are consistent with the provisions of ERISA." *Best v. Cyrus*, 310 F.3d at 935. In *Kuper v. Iovenko*, 66 F.3d 1447, 1457 (6th Cir. 1995) the Sixth Circuit addressed whether the requirement in an ESOP that it invest in company stock can override ERISA's duties. After stating that "the purpose of ESOPs cannot override ERISA's goal of ensuring the proper management and soundness of employee benefit plans," the Sixth Circuit explained the general fiduciary duties in an ESOP:

In drafting the ESOP provisions of ERISA, Congress intended to encourage employees' ownership of their employer company. In order to promote this goal, Congress carved out specific exceptions to certain fiduciary duties in the case of an ESOP. For example, an ESOP fiduciary is "exempted from ERISA's duty to 'diversify the investments of the plan.'" *Martin*, 965 F.2d at 665 (quoting 29 U.S.C. § 1104(a)(1)(C) and (2)). Thus, as a general rule, ESOP fiduciaries cannot be held liable for failing to diversify investments, regardless of whether diversification would be prudent under the terms of an ordinary non-ESOP pension plan. ESOPs also are exempted from ERISA's "strict prohibitions against self-dealing, that is 'deal[ing] with the assets of the plan in his own interest or for his own account.'" *Martin*, 965 F.2d at 665 (quoting 29 U.S.C. § 1106(b)(1)).

However, the statutory exemptions for ESOPs in ERISA do[ ] not relieve a fiduciary ... from the general fiduciary responsibility provisions of [§ 1104] which, among other things, require a fiduciary to discharge his duties respecting the plan solely in the interests of plan participants and beneficiaries and in a prudent fashion ... nor does it affect the requirement ... that a plan must be operated for the exclusive benefit of employees and their beneficiaries. *Martin*, 965 F.2d at 665 (quoting 44 Fed.Reg. No. 168 at p. 50369 (August 28, 1979)). Thus, "ESOP fiduciaries must, then, wear two hats, and are 'expected to administer ESOP investments consistent with the provisions of both a specific employee benefits plan and

ERISA.'" *Moench,* 62 F.3d at 569 (quoting *Kuper v. Quantum Chem. Corp.,* 852 F.Supp. 1389, 1395 (S.D.Ohio 1994)).

*Kuper,* 66 F.3d at 1458. The court went on to define the contours of an ESOP's fiduciary duty to accommodate both ERISA's exemptions for ESOPs and the general duties under ERISA (adopting its holding from the Court of Appeals for the Third Circuit):

> We agree [with the Third Circuit] that a proper balance between the purpose of ERISA and the nature of ESOPs requires that we review an ESOP fiduciary's decision to invest in employer securities for an abuse of discretion. In this regard, we will presume that a fiduciary's decision to remain invested in employer securities was reasonable. A plaintiff may rebut this presumption of reasonableness by showing that a prudent fiduciary acting under similar circumstances would have made a different investment decision.

*Id.* at 1449.

There are two important points to be gleaned from *Kuper.* First, the fact that the Plan requires investment in Kmart stock will not ipso facto relieve the Outside Directors of their fiduciary obligations to prudently invest or to diversity. Second, whether or not they have breached their fiduciary duties requires development of the facts of the case. The result of these two points is that Rankin has stated a claim against them; whether or not she will prevail is another matter to be determined later. What the Outside Directors would have Rankin do is not only to plead but to prove all of the facts in support of her claim to show that their decision was not reasonable. This is not required in a complaint. The Outside Directors' argument in favor of dismissal fails.

## VI. Conclusion

Many of the arguments presented in the various defendants's motions are a veiled attempt to obtain summary judgment at the pleading stage. Also, there is implicit finger pointing among the defendants as to who is or who is not a fiduciary with respect to the Plan and who was responsible for making Plan decisions during the relevant time.

The Plan names only Kmart as the Plan Administrator, but it does say that Kmart can appoint an investment manager or managers with regard to an investment fund and may delegate its duties to any person or persons or committee or committees. *See* Article 16.1. The Board of Directors passed a resolution giving some, but not all, of their authority to the EBPIC. Thus, the Plan Documents imbue all of the defendants with some degree of authority over the Plan. However, the manner in which each defendant, which are in the universe of possible decision makers, operated is for now something of a black box. To expect a plaintiff to be able to turn on the light and point to the particular individuals who exercised decision making authority is simply too much to require at this stage of the case. To accept defendants's positions that they are not fiduciaries would mean that there was no one responsible for discretionary decision making. Their position is reminiscent of the "old shell game."

Overall, it cannot be said that in the Second Amended Complaint that Rankin has failed to state a claim against all of the defendants.

SO ORDERED.